**No. 13-1402**

**In The**
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

ORLAND RESIDENCE, LTD.,
*Plaintiff-Appellee,*

and

FIRST REAL ESTATE DEVELOPMENT CORPORATION; RESOLUTION TRUST CORPORATION,
as Receiver for Citadel Federal Savings and Loan,
*Plaintiffs*

v.

KENNETH E. NELSON,
*Defendant-Appellant,*

and

HILTON HEAD HOTEL INVESTORS; WALLACE H. HUSTAD; MITCHELL A. ANDERSON;
ALBERICI/DENVER; CLELAND CONSTRUCTION CO.; PARRISH PLUMBING CO.; BAILEY
SPECIALTIES; B&B CONTRACTING CO.; CROSS COUNTRY CABINET & MILLWORK;
NOLAND CO.; GRINNELL CORP.; EASTERN TECHNOLOGIES; GRAYBAR ELECTRIC CO.;
HOWARD B. JONES & SONS; CAPITOL MATERIALS; DOVER ELECTRIC CO.; MCCONNELL &
ASSOCIATES; CAMERON & BARKLEY CO.; SOUTH CAROLINA TAX COMMISSION,
*Defendants,*

and

SANWA BUSINESS CREDIT CORPORATION,
*Defendant and Third-Party Plaintiff,*

v.

RUTH HUSTAD,
*Third-Party Defendant*

On Appeal from the United States District Court
for the District of South Carolina

**BRIEF OF APPELLEE, ORLANDO RESIDENCE, LTD.**

Eugene N. Bulso, Jr.
Paul J. Krog
LEADER, BULSO & NOLAN, PLC,
414 Union Street, Suite 1740, Nashville, TN 37219
*Counsel for Plaintiff-Appellee*

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................. i

TABLE OF AUTHORITIES ........................................................................ iv

JURISDICTIONAL STATEMENT ..............................................................1

STATEMENT OF ISSUES ...........................................................................2

STATEMENT OF THE CASE .......................................................................4

STATEMENT OF FACTS ..............................................................................6

SUMMARY OF ARGUMENT ....................................................................12

ARGUMENT ...............................................................................................14

I.    STANDARD OF REVIEW. ...........................................................14

II.   ORL HAS STANDING TO ENFORCE THE CONFESSION OF
      JUDGMENT. ..................................................................................14

      A.  ORL Was Substituted Without Objection from Nelson. ......14

      B.  The District Court's Finding that ORL Has Standing Is Not Clearly
          Erroneous: the Record Shows the Confession Was Transferred to ORL,
          and Nelson's Own Testimony Supports ORL's Interest. .....................16

      C.  Nelson Cannot Destroy ORL's Interest in the Confession of Judgment
          by Pointing Out Technical Drafting Peccadilloes in the Wisconsin
          Court Record. ..........................................................................19

III.  THE DISTRICT COURT HAD SUBJECT-MATTER JURISDICTION
      OVER THE PROCEEDING BELOW. .....................................................22

      A.  The District Court Possessed Subject-Matter Jurisdiction, and
          Subsequent Events Do Not Deprive a District Court of Jurisdiction
          Previously Acquired. ..........................................................22

      B.  The Parties Are, Regardless, Completely Diverse. ..............................23

      C.  The District Court Did Not Lose Jurisdiction Over the Proceeding
          Below Via Entry of a Final Judgment. ...........................................24

IV.   THE DISTRICT COURT HAD PERSONAL JURISDICTION OVER
      NELSON. .....................................................................................29

-i-

V.   ORL'S USE OF THE CONFESSION OF JUDGMENT WAS
     PROCEDURALLY APPROPRIATE..........................................................31

     A.  ORL Properly Filed the Judgment in the Action Below. .....................31

     B.  Nelson's Arguments Regarding Due Process Are Improperly Presented
         for the First Time on Appeal. ...................................................33

     C.  Nevertheless, Nelson Waived Pre-Judgment Hearing..........................34

     D.  Even if His Due-Process Arguments Were Not Waived, Nelson Was
         Properly Served and Was Given a Full Opportunity to Assert Defenses
         in the District Court. ............................................................35

         1.  The Fourteenth Amendment Does Not Apply. ............................35

         2.  Nelson Received Notice and Was Afforded Ample Opportunity to
             Present Defenses...............................................................36

         3.  The Judgment Has Not Deprived Nelson of Any Property.............37

VI.  NELSON WAS JOINTLY AND SEVERALLY LIABLE FOR A DEBT
     IN EXCESS OF $14 MILLION: HIS CONFESSION DOES NOT
     IMPOSE AN IMPERMISSIBLE PENALTY. ............................................38

VII. NELSON DOES NOT HAVE A DEFENSE BASED ON THE STATUTE
     OF LIMITATIONS. ..................................................................42

     A.  The District Court Raised No Issue *Sua Sponte*..................................42

     B.  The District Court Did Not Abuse Its Discretion in Holding the Statute
         of Limitations to Have Been Equitably Tolled....................................46

     C.  Nelson's Miscellaneous Bases for Attacking the District Court's
         Ruling Are Universally Unavailing....................................................49

         1.  ORL Cannot Be Precluded from Asserting Its Rights Simply
             because It Is Another Party's Successor in Interest. ......................49

         2.  Equitable Tolling Is Not Confined to the Limited Circumstances
             Claimed by Nelson. ............................................................51

         3.  Nelson's Arguments Regarding Merger and the Alleged
             Impossibility of Disloyalty Are Inconsistent with a System of
             Ordered Justice. ...............................................................52

    4.  Nelson's Argument Regarding the Absence of Harm to ORL Would Eviscerate Equitable Tolling and Continues His Flawed Presentation of the Doctrine's Basis.................................................54

  D.  Nelson Is Estopped to Invoke the Statute of Limitations.....................55

VIII.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING NELSON RELIEF UNDER RULE 60....................................58

IX.  NELSON IS NOT ENTITLED TO AN ORDER REQUIRING ORL TO DISGORGE AMOUNTS COLLECTED. ...................................................58

CONCLUSION ................................................................................................59

STATEMENT WITH REGARD TO ORAL ARGUMENT................................60

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)................................61

RULE 32(f) ADDENDUM OF STATUTES, RULES, AND REGULATIONS....62

12 U.S.C. § 1441a (1994). Thrift Depositor Protection Oversight Board and Resolution Trust Corporation .....................................................62

12 U.S.C. § 1730(k)(1) (1988). Termination of insurance and enforcement provisions..........................................................................63

12 U.S.C. § 1819. Corporate powers ...................................................64

12 U.S.C. § 1823. Corporation monies..................................................64

28 U.S.C. § 1874. Actions on bonds and specialties .............................65

28 U.S.C. § 2283. Stay of State court proceedings ...............................65

U.S. Constitution, Amendment XIV, § 1................................................65

South Carolina Code § 15-35-350. Judgment by confession; generally. ............65

South Carolina Code § 15-35-350. Judgment by confession; statement in writing and contents thereof ........................................................66

Federal Rule of Evidence 803(15). Exceptions to the Rule Against Hearsay—Regardless of Whether the Declarant Is Available as a Witness...............66

Federal Rule of Civil Procedure 60. Relief from a Judgment or Order .............66

RULE 32.1 ADDENDUM OF UNAVAILABLE DISPOSITIONS......................68

CERTIFICATE OF SERVICE ........................................................................77

# TABLE OF AUTHORITIES

## Cases

*Acosta v. Artuz*,
  221 F.3d 117 (2d Cir. 2000) ................................................................45

*Adair v. Lease Partners, Inc.*,
  587 F.3d 238 (5th Cir. 2009) ..............................................................23

*Alkire v. N.L.R.B.*,
  716 F.2d 1014 (4th Cir. 1983) .............................................................53

*All Star, Inc. v. Fellows*,
  676 S.E.2d 808 (Ga. Ct. App. 2009) ...................................................53

*Alland v. Consumers Credit Corp.*,
  476 F.2d 951 (2d Cir. 1973) ................................................................30

*Allen v. McCurry*,
  449 U.S. 90 (1980) ..............................................................................16

*Allen v. Zurich Ins. Co.*,
  667 F.2d 1162 (4th Cir. 1982) .............................................................56

*Am. Bankers Ins. Group, Inc. v. Long*,
  453 F.3d 623 (4th Cir. 2006) ..............................................................47

*Atherton v. F.D.I.C.*,
  519 U.S. 213 (1997) ............................................................................44

*Atl. Leasing & Fin., Inc. v. IPM Tech., Inc.*,
  885 F.2d 188 (4th Cir. 1989) ..............................................................36

*Berke v. Bloch*,
  242 F.3d 131 (3d Cir. 2001) ................................................................27

*Bethlehem Steel Corp. v. Devers*,
  389 F.2d 44 (4th Cir. 1968) ................................................................30

*Bigelow v. RKO Radio Pictures*,
  327 U.S. 251 (1946) ............................................................................51

***Black v. Haile***,
240 S.E.2d 646 (S.C. 1978)................................................................57

***Boosalis Options, LP v. Farnbacher Loles Motorsports, LLC***,
No. C09-80316, 2010 WL 335651 (N.D. Cal. Jan. 22, 2010) ............32

***Brazell v. Windsor***,
682 S.E.2d 824 (S.C. 2009)..............................................................41

***Brown v. R.J. Reynolds Tobacco Co.***,
611 F.3d 1324 (11th Cir. 2010) .......................................................21

***Caperton v. Beatrice Pocahontas Coal Co.***,
585 F.2d 683 (4th Cir. 1978) ...........................................................27

***Cashin v. Cashin***,
681 N.W.2d 255 (Wis. Ct. App. 2004)..............................................21

***Chao v. Va. Dep't of Transp.***,
291 F.3d 276 (4th Cir. 2002) ...........................................................14

***Chernin v. Welchans***,
641 F. Supp. 1349 (N.D. Ohio 1986) ...............................................37

***Chick Kam Choo v. Exxon Corp.***,
486 U.S. 140 (1988) ........................................................................59

***Choi v. Kim***,
50 F.3d 244 (3d Cir. 1995)...............................................................37

***City of Vicksburg v. Henson***,
231 U.S. 259 (1913) ........................................................................53

***D.H. Overmyer Co. v. Frick Co.***,
405 U.S. 174 (1972) ........................................................................35

***De La Rama S.S. Co. v. United States***,
344 U.S. 386 (1953) ........................................................................22

***Destfino v. Reiswig***,
630 F.3d 952 (9th Cir. 2011).............................................................23

*Dorell v. Florence Dist. No. One*,
  341 S.E.2d 797 (S.C. Ct. App. 1986) ................................................14

*Dunbar v. Carlson*,
  533 S.E.2d 913 (S.C. Ct. App. 2000) ...............................................57

*Eberhardt v. Integrated Design & Constr., Inc.*,
  167 F.3d 861 (4th Cir. 1999) ............................................................46

*Erie R.R. Co. v. Tompkins*,
  304 U.S. 64, 78 (1938) .....................................................................44

*Eriline Co., S.A. v. Johnson*,
  440 F.3d 648 (4th Cir. 2006) ............................................................45

*F.D.I.C. v. Aaronian*,
  93 F.3d 636 (9th Cir. 1996) ..............................................................36

*F.D.I.C. v. Cocke*,
  7 F.3d 396 (4th Cir. 1993) ........................................................ 43, 49

*F.D.I.C. v. Deglau*,
  207 F.3d 153 (3d Cir. 2000) .............................................................31

*Fairfax Countywide Citizens Ass'n v. Fairfax County*,
  571 F.2d 1299 (4th Cir. 1978) ..........................................................28

*Ferencich v. Meritt*,
  79 F. App'x 408 (10th Cir. 2003) ......................................................46

*Fils v. City of Aventura*,
  647 F.3d 1272 (11th Cir. 2011) ........................................................45

*Fireman's Ins. Co. of Newark, N.J. v. State Farm Mut. Auto. Ins. Co.*,
  370 S.E.2d 85 (S.C. 1988) ................................................................40

*FleetBoston Fin. Corp. v. Alt*,
  688 F. Supp. 2d 277 (D. Mass. 2009) ...............................................19

*Gainey v. Anderson*,
  68 S.E. 888 (S.C. 1910) ...................................................................54

***Greer Bank & Trust Co. v. Waldrop***,
  151 S.E. 920 (S.C. 1930)................................................................40

***Grooms v. Kennerly***,
  401 S.E.2d 190 (S.C. Ct. App. 1991) ..........................................51

***Groves v. City of Darlington***,
  346 F. App'x 965 (4th Cir. 2009)................................................26

***Hardiman v. Reynolds***,
  971 F.2d 500 (10th Cir. 1992)....................................................45

***Hayne Fed. Credit Union v. Bailey***,
  489 S.E.2d 472 (S.C. 1997) ........................................................56

***Holland v. Big River Minerals Corp.***,
  181 F.3d 597 (4th Cir. 1999) .............................................. 33, 50

***Holy Loch Distribs., Inc. v. Hitchcock***,
  503 S.E.2d 787 (S.C. 1998).........................................................52

***Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.*** (***Hooper I***),
  659 S.E.2d 213 (S.C. Ct. App. 2008) ...................................48, 49

***Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.*** (***Hooper II***),
  687 S.E.2d 29 (S.C. 2009)...................................... 47, 48, 52

***In re Atravasada Land & Cattle, Inc.***,
  308 B.R. 255 (Bankr. S.D. Tex. 2008) ......................................19

***In re Gaye-Joy Corp.***,
  84 B.R. 235 (Bankr. M.D. Fla. 1988)........................................19

***In re James Estate***,
  65 N.W.2d 9 (Wis. 1954) ............................................................19

***In re Lane***,
  215 B.R. 810 (Bankr. E.D. Va. 1997) ........................................53

***In re XMH Corp.***,
  647 F.3d 690 (7th Cir. 2011) ......................................................22

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) ...................................................................30

*Ionnides v. Univ. of Tex. M.D. Anderson Cancer Ctr.*,
418 F. App'x 269 (5th Cir. 2011).................................................45

*J.D. Holdings, LLC v. BD Ventures, LLC*,
766 F. Supp. 2d 109 (D.D.C. 2011) ...........................................33

*JASDIP Props. SC, LLC v. Estate of Richardson*,
720 S.E.2d 485 (S.C. Ct. App. 2011) .........................................41

*Jordahl v. Democratic Party of Va.*,
122 F.3d 192 (4th Cir. 1997).......................................................21

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
20 F.3d 1250 (3d Cir. 1994) ........................................................35

*Jung v. K&D Mining Co.*,
356 U.S. 335 (1958) .....................................................................26

*Karpel v. Inova Health Sys. Servs.*,
134 F.3d 1222 (4th Cir. 1998).....................................................33

*King v. Herbert J. Thomas Mem'l Hosp.*,
159 F.3d 192 (4th Cir. 1998).......................................................56

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .....................................................................28

*Lee v. Storfer*,
156 S.E. 177 (S.C. 1930)..............................................................21

*LeRoy Dyal Co. v. Allen*,
161 F.2d 152 (4th Cir. 1947).......................................................20

*Lewis v. B.F. Goodrich Co.*,
850 F.2d 641 (10th Cir. 1988)....................................................26

*Lowery v. Stovall*,
92 F.3d 219 (4th Cir. 1996).........................................................56

*Lowry v. S. Ry. Co.*,
  101 S.W. 1157 (Tenn. 1907) ...............................................................20

*Magnolia N. Prop. Owners' Ass'n v. Heritage Cmties., Inc.*,
  725 S.E.2d 112 (S.C. Ct. App. 2012) ......................................... 43, 47, 48, 49, 52

*Mann v. Haigh*,
  120 F.3d 34 (4th Cir. 1997) ...............................................................55

*Maybin v. Northside Corr. Ctr.*,
  891 F.2d 72, (4th Cir. 1989) ...............................................................30

*McGuire v. Walker*,
  423 S.E.2d 617 (W.Va. 1992) ...............................................................18

*Meyer v. Berkshire Life Ins. Co.*,
  372 F.3d 261 (4th Cir. 2004) ...............................................................15

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009) ...............................................................26

*Mollan v. Torrance*,
  22 U.S. (9 Wheat) 537 (1824) ...............................................................22

*Muller v. Jackson Hole Mtn. Resort Corp.*,
  210 F. App'x 792 (10th Cir. 2006)...............................................................34

*N.H. Fire Ins. Co. v. Scanlon*,
  362 U.S. 404 (1960) ...............................................................32

*Nashville Lodging Co. v. R.T.C.*,
  59 F.3d 236 (D.C. Cir. 1995)...............................................................41

*Nat'l Biscuit Co. v. Litzky*,
  22 F.2d 939 (6th Cir. 1927)...............................................................20

*Nat'l Credit Union Admin. Bd. v. Gray*,
  1 F.3d 262 (4th Cir. 1993)...............................................................58

*Neville v. Kelley*,
  77 S.E. 743 (S.C. 1913) ...............................................................57

*O'Melveny & Myers v. F.D.I.C.*,
  512 U.S. 79 (1994) ................................................................44

*Orlando Residence, Ltd. v. GP Credit Co.*,
  553 F.3d 550 (7th Cir. 2009) ................................ 8, 9, 48, 54

*Orlando Residence, Ltd. v. GP Credit Co.*,
  609 F. Supp. 2d 813 (E.D. Wis. 2009) .............................9, 48

*Orlando Residence, Ltd. v. Nashville Lodging Co.*,
  104 S.W.3d 848 (Tenn. Ct. App. 2002) ...............................8

*Orlando Residence, Ltd. v. Nelson*,
  --- N.W.2d ---, 2013 WL 2232290 (Wis. Ct. App. 2013) ............. 9, 10, 11, 16, 51

*Orlando Residence, Ltd. v. Nelson*,
  No. 11-MC-55, 2011 WL 4983170 (E.D. Wis. Oct. 19, 2011)...........................57

*Orlando Residence, Ltd. v. Nelson*,
  No. 2012AP1528 (Wis. Ct. App. Aug. 21, 2012) ...............................16

*Pantusco v. Wiley*,
  616 S.E.2d 901 (Ga. Ct. App. 2005) ...................................53

*Pittsburgh, Cincinnati, & St. Louis Ry. v. Ramsey*,
  89 U.S. 322 (1874) ...............................................................15

*Plasterers' Local Union No. 96 Pension Plan v. Pepper*,
  663 F.3d 210 (4th Cir. 2011) ...............................................46

*Point Developers, Inc. v. F.D.I.C.*,
  961 F. Supp. 449 (E.D.N.Y. 1997).......................................18

*Porras v. Petroplex Sav. Ass'n*,
  903 F.2d 379 (5th Cir. 1990) ...............................................18

*Publicis Commc'n v. True N. Commc'ns, Inc.*,
  206 F.3d 725 (7th Cir. 2000) ..............................................20

*Quarles v. Miller*,
  86 F.3d 55 (4th Cir. 1996) ...................................................16

*Quincy V, LLC v. Herman*,
   652 F.3d 116 (1st Cir. 2011) ................................................. 26, 27, 28

*R.T.C. v. Acton*,
   49 F.3d 1086 (5th Cir. 1995) .................................................50

*R.T.C. v. Forest Grove, Inc.*,
   33 F.3d 284 (3d Cir. 1994) ...................................................31

*R.T.C. v. Hecht*,
   818 F. Supp. 894 (D. Md. 1992)....................................... 43, 49

*R.T.C. v. Koock*,
   867 F. Supp. 284 (E.D. Pa. 1994)....................................... 31, 33

*RM 18 Corp. v. Aztek Assocs., L.P. (In re Malease 14FK Corp.)*,
   351 B.R. 34 (E.D.N.Y. 2006) ...............................................21

*Robinson v. Equifax Info. Servs., LLC*,
   560 F.3d 235 (4th Cir. 2009) ............................................. 17, 33

*Rock River Commc'ns, Inc. v. Universal Music Group, Inc.*,
   807 F. Supp. 2d 917 (C.D. Cal. 2011)...................................18

*Rollins v. Kahn*,
   29 N.W. 640 (Wis. 1886) ......................................................21

*S&T Bank v. Zokaites*,
   No. 10-1748, 2011 WL 1298171 (W.D. Pa. March 31, 2011)...........................21

*S.E.C. v. Secs. Investor Protection Corp.*,
   842 F. Supp. 2d 321 (D.D.C. 2012) .....................................32

*Sec. Mgmt., Inc. v. Schoolfield Furniture Indus., Inc.*,
   272 S.E.2d 638 (S.C. 1980)...................................................30

*Semande v. Estes*,
   871 N.E.2d 268 (Ill. Ct. App. 2007).....................................53

*Sewell v. Dykes*,
   26 S.W.2d 502 (Ky. Ct. App. 1930)......................................19

*Simmons v. United Mortg. & Loan Inv., LLC*,
    634 F.3d 754 (4th Cir. 2011) ................................................................16

*Simpson v. T.D. Williamson Inc.*,
    414 F.3d 1203 n.4 (10th Cir. 2005) ....................................................50

*Societe Comptoir De L'Industrie Cotonniere v. Alexander's Dep't Stores*,
    190 F. Supp. 594 (S.D.N.Y. 1961) .....................................................18

*Sprint/United Mgmt. Co. v. Mendelsohn*,
    552 U.S. 379 (2008) ............................................................................15

*State ex rel. Mitchell Aero Inc., v. Bd. of Review*,
    246 N.W.2d 521 (Wis. 1976) ..............................................................16

*Sumter Tobacco Warehouse Co. v. Phoenix Ins. Co.*,
    56 S.E. 654 (S.C. 1907) ......................................................................20

*Taylor v. United States*,
    320 F.2d 843 (9th Cir. 1963) ..............................................................36

*Theodore v. Mozie*,
    95 S.E.2d 173 (S.C. 1956) ..................................................................40

*Thomson v. Gaskill*,
    315 U.S. 442 (1942) ............................................................................24

*Town of Washburn v. Washburn Waterworks Co.*,
    98 N.W. 539 (Wis. 1904) ....................................................................21

*Twelfth RMA Partners, L.P. v. Nat'l Safe Corp.*,
    518 S.E.2d 44 (S.C. Ct. App. 1999) ............................................. 50, 55

*U.S. Dep't of Labor v. Wolf Run Mining Co.*,
    452 F.3d 275 (4th Cir. 2006) ..............................................................33

*U.S. Mortgage v. Laubach*,
    73 P.3d 887 (Okla. 2003) ....................................................................57

*United States v. Bennett*,
    825 F. Supp. 1512 (D. Colo. 1993) .....................................................20

*United States v. Bonilla-Montenegro*,
   331 F.3d 1047 (9th Cir. 2003)...................................................................20

*United States v. Burke*,
   504 U.S. 229 (1992) ......................................................................... 44, 45

*United States v. Nichols*,
   169 F.3d 1255 (10th Cir. 1999)...............................................................20

*United States v. Payne*,
   81 F.3d 759 (8th Cir. 1996)....................................................................33

*Usry v. Price*,
   325 F.2d 657 (5th Cir. 1963) ..................................................................19

*Willis v. Lepine*,
   687 F.3d 826 (7th Cir. 2012) ..................................................................34

### Statutes

12 U.S.C. § 1441a (1994) .................................................................. 1, 18, 22

12 U.S.C. § 1730 (1988) ...........................................................................1, 22

12 U.S.C. § 1819..........................................................................................1, 22

12 U.S.C. § 1823..............................................................................................18

28 U.S.C. § 1291................................................................................................1

28 U.S.C. § 1332..........................................................................................1, 23

28 U.S.C. § 1874..............................................................................................31

28 U.S.C. § 2283..............................................................................................58

S.C. Code § 15-35-360....................................................................................39

S.C. Code Ann. § 15-35-350..................................................................... 31, 39

U.S. const. amend. XIV, § 1 ...........................................................................35

Wis. Stat. Ann. § 809.62 .................................................................................16

**Other Authorities**

1 Henry R. Gibson, ***Gibson's Suits in Chancery*** § 60 (Arthur Crownover ed. 5th ed. 1955) (1891) ...................................................................................51

18 Am. Jur. 2d *Corporations* § 46 ..........................................................53

18 C.J.S. *Corporations* § 20....................................................................53

3 William Blackstone, ***Commentaries***....................................................57

FDIC, ***Managing the Crisis: The FDIC and the RTC Experience 1980–1994*** (1998)...........................................................................................50

Federal Rule of Civil Procedure 11 .........................................................27

Federal Rule of Civil Procedure 4 ...........................................................30

Federal Rule of Civil Procedure 5 ...........................................................29

Federal Rule of Civil Procedure 56 .........................................................32

Federal Rule of Civil Procedure 60 .........................................................58

Federal Rule of Evidence 803(15) ...........................................................17

***In re: Elec. Case Filing Policies and Procedures***, No. 3:05-MC-5003-17 (D.S.C. Feb. 18, 2005)......................................................................................29

## JURISDICTIONAL STATEMENT

This Court possesses jurisdiction pursuant to 28 U.S.C. § 1291, as the Defendant appeals from a final judgment. The District Court originally acquired jurisdiction under former 12 U.S.C. § 1730(k)(1) (1988). Section 1730 was repealed during the pendency of the suit but 12 U.S.C. §§ 1441a(*l*) (1994) and 1819(b)(2) preserved the same jurisdictional grant. In addition, ORL and Nelson are citizens of different states for purposes of 28 U.S.C. § 1332.

### STATEMENT OF ISSUES

1.    Whether the District Court's determination that ORL is the successor to RTC's interest in Nelson's confession of judgment—and therefore has standing—was clearly erroneous where the record contains an assignment to ORL's immediate predecessor, a warranty by that predecessor that it had received the confession from RTC, and a final order from a Wisconsin court transferring the confession to ORL.

2.    Whether the District Court, which properly acquired jurisdiction over the action below via removal and never previously entered a final judgment, retained subject-matter jurisdiction sufficient to enter a judgment.

3.    Whether the District Court properly exercised personal jurisdiction over Nelson, either as a result of the continued pendency of the underlying action or via Nelson's consent to personal jurisdiction, whether given in the confession or by failing to assert the defense in a timely manner below.

4.    Whether the District Court, having never entered a final judgment, erred by entering one in the action below against Nelson based on Nelson's confession of judgment.

   a.  Whether Nelson waived the due-process arguments he presents to this Court by failing to raise them below.

b.  Whether, regardless of any waiver below, the District Court's actions did not violate Nelson's due-process rights in light of his confession and the notice and extensive hearing that the District Court afforded him.

c.  Whether, assuming a defect in the District Court's procedures, any due-process injury occurred, where the District Court's judgment did not deprive Nelson of any property prior to the court's ruling on his post-judgment motions.

5.    Whether the District Court properly concluded that Nelson's $4 million confession of judgment is not an impermissible penalty in light of the $14 million claim for which it was substituted.

6.    Whether the District Court abused its discretion in holding the statute of limitations to have been equitably tolled while the confession was held by a company under Nelson's control.

7.    Whether, even if equitable tolling were not properly applied, Nelson should have been judicially estopped from invoking the statute of limitations.

8.    Whether Nelson was entitled to relief under Rule 60, where he presented no meritorious defenses to the judgment.

9.    Whether the restitution order sought by Nelson would violate the Anti-Injunction Act.

## STATEMENT OF THE CASE

This action to collect on a guaranty was removed to the District Court in 1991. (JA5.) In July 1993, the District Court entered a conditional order of dismissal based an announced settlement, permitting the parties to reopen within ninety days. (JA49.) The settlement was not finalized, and the court entered an order with almost identical operative language on October 14, 1993 (ninety-three days after the first). (JA50–51.) The parties executed a settlement agreement, but it failed to resolve all issues in the case. The court held subsequent proceedings in December 1993 and into 1994. (*See* JA11.) No subsequent, final order was entered, but the plaintiff assigned its rights (JA102–04) and case activity ceased. (*See* JA11.)

Nelson and co-defendant Wallace Hustad executed confessions of judgment in connection with the settlement agreement. (JA112–13.) Hustad's was filed with the district court in 1997 by the Wisconsin attorney representing Nelson. (JA66, 225.) Nelson's, after having been held by a company under his own control for sixteen years, was transferred by court order to ORL in June 2011. (JA100.) ORL moved to substitute itself as the plaintiff and filed Nelson's confession on September 19, 2011. (JA94, 110.) The motion to substitute was unopposed and was granted on October 17, 2011. (JA115.)

The District Court received extensive briefing thereafter on Nelson's motion to strike the confession and ORL's motion for entry of judgment. (JA12–14, 116–371.) The District Court held a hearing, but mooted both motions upon entering the judgment on August 15, 2012. (JA14, 372.) Nelson moved to alter, amend, vacate, or dismiss, as well as for a stay, on August 23, 2013. (JA373–77.) The parties relied in part on their prior briefing and in part on new briefing. (*See* JA407–12.) The District Court denied all Nelson's requests for relief on March 15, 2013. (JA415–39.) Nelson took this appeal on March 20, 2013. (JA440.)

## STATEMENT OF FACTS

The story of this case actually consists of two stories. The first, set in South Carolina, began in 1986, when Kenneth Nelson executed a joint and several unconditional guaranty (ORL App'x 23–25[1]) on $7,450,000 in promissory notes payable to Independence Federal Bank. (JA30, 70.) Nelson executed the guaranty on behalf of Hilton Head Hotel Investors ("HHHI"), a company in which he and two other gentlemen (Wallace Hustad and Mitchell Anderson) were partners. (JA68.) HHHI attempted to develop a hotel on Hilton Head Island, but, for reasons no longer relevant, the project failed to pay for itself, and HHHI defaulted on the Independence loans and a separate loan from a second lender. (JA70–72.)

HHHI's creditors commenced collection efforts. Independence became insolvent, and the Federal Savings and Loan Insurance Corporation ("FSLIC"), (later replaced by the Resolution Trust Corporation ("RTC")), commenced this lawsuit in its stead to collect on the guarantees. (JA18, 67.) The parties eventually reached a settlement: Nelson and Hustad each agreed to pay $80,000, assist RTC in foreclosing on the hotel, and execute a $4,000,000 confession of judgment securing the other payments. (JA76–77.) In exchange, RTC agreed to cancel the guaranty debt (by then over $14,000,000). (JA74–75.) Nelson initialed each page

---

[1] ORL has contemporaneously filed a Motion for Leave to File Supplemental Materials, pursuant to Local Rule 28(b). The supplemental materials filed subject to that motion are cited herein to "ORL App'x."

of the settlement agreement and the confession (JA67–90, 112–13) and acknowledged the confessed amount was "just and due" (JA113). The same attorney representing Nelson here certified that he had explained the agreement's terms to Nelson and that Nelson understood them and had signed knowingly and voluntarily. (JA87.)

Nelson failed to make $64,000 in payments called for by the settlement. (Def.'s Br. 52.) RTC, however, did not seek entry of the confessed judgment, because, in pursuit of its mission to liquidate assets expeditiously, it had sold the confessions in February 1995. (JA102.) RTC's assignee, in turn, sold the confessions to GP Credit Company, LLC,[2] ("GP") an entity technically owned by Nelson's wife, Susan. (JA102, 207, 225.) Nelson thereafter claimed that he owed the $4,000,000 reflected on the confession. (*E.g.*, JA203.)

The second story began in 1981, when Nelson had become involved in a hotel business owned by Samuel Hardage. (JA379.) As part of a 1985 settlement of a lawsuit that terminated their business relationship, Nelson signed a $250,000 promissory note in favor of Orlando Residence, Ltd., ("ORL") a company owned by Hardage. (JA380.) Just as he failed to pay RTC, Nelson failed to pay ORL. (*Id.*) Instead, he spent the next twenty-seven years engaged in various efforts, often

---

[2] Nelson set up GP to acquire a judgment obtained against Nelson by the RTC on an unpaid loan from another failed thrift, Great Plains Savings and Loan. (*See* JA105–08.)

illegal, to avoid payment on the Tennessee judgment ORL obtained as a result. *See, e.g.*, **Orlando Residence, Ltd. v. GP Credit Co.**, 553 F.3d 550, 553–55 (7th Cir. 2009); **Orlando Residence, Ltd. v. Nashville Lodging Co.**, 104 S.W.3d 848, 854 (Tenn. Ct. App. 2002).

Nelson's efforts to avoid ORL brought repeated rebukes from numerous courts. One Tennessee Chancellor concluded, "Mr. Nelson is dishonest and . . . will do and say just about anything. . . It's perfectly obvious that this assignment is a device to defeat this garnishment." (JA398.) A United States Bankruptcy Judge found "a history of unconscionable conduct" by Nelson and noted, describing a Chapter 11 petition filed by a company Nelson controlled, "If this is not a bad[-]faith filing, there is no such thing." (JA403.) A Wisconsin Circuit Judge remarked, somewhat more blandly, "I have to tell you, I didn't think [Nelson or his wife] was very credible." (JA406.)

Most scathingly, Judge Posner, writing for a unanimous Seventh Circuit panel, declared:

> The time has come to put an end to the [Nelsons]' stubborn efforts to prevent Orlando from obtaining the relief to which it is entitled. The district judge should give consideration to enjoining the defendants from further maneuvers to evade the judgments that Orlando has obtained against them.

*Orlando*, 553 F.3d at 558–59. The District Court entered the bill of peace that the Seventh Circuit had (*sua sponte*) recommended. *See* **Orlando Residence, Ltd. v.**

***GP Credit Co.***, 609 F. Supp. 2d 813, 816–17 (E.D. Wis. 2009). The bill of peace apparently did not apply to appellate proceedings, so the Wisconsin Court of Appeals was compelled to reiterate Judge Posner's sentiment. ***Orlando Residence, Ltd. v. Nelson***, --- N.W.2d ---, 2013 WL 2232290, ¶ 23 (Wis. Ct. App. May 22, 2013).

In the course of ORL's efforts to collect its judgments, Tennessee courts declared GP to be Nelson's alter ego. *See **Orlando***, 553 F.3d at 558. As a result, the Wisconsin Circuit Court ordered all of its property, including an asset Nelson had described as a "judgment" originally entered in favor of RTC, turned over to ORL. (JA100.)

Nelson has testified about this "judgment" on several occasions, including in 2008:

By Mr. Ahrens:

Q:  So what judgments does GP own against you?

A:  . . . there was another matter in South Carolina, the RTC got a confession of judgment and that, too, is owned by GP Credit.

Q:  What was the amount of the RTC's confession of judgment in South Carolina?

A:  4 million, I think.

Q:  Okay, take a look at defendant's exhibit 43. Can you just tell me, what is defendant's exhibit 43?

A:  It's a purchase and sale agreement by which GP Credit purchased from a company called Asset Recovery and Management Services, LP, that South Carolina judgment that I referred to.

Q:  . . . And what was the date of this purchase?

A:  First day of November, 1994.

Q:  So GP Credit has owned a $4 million judgment against you ever since that time?

A:  That's correct.

(JA145–46.)  Nelson's present incredulity at the confession's enforceability arose only when ORL appeared likely to obtain it. A June 7, 2011, order vested title to that asset—later revealed to be the confession of judgment in the action below—in ORL. (*See id.*; JA146.) *See also **Orlando***, 2013 WL 2232290, ¶ 19. The Wisconsin court determined that the fair-market value of the confession was $20,000, the same amount for which GP had purchased it. (JA,103, 207, 358.) On September 19, 2011, ORL filed the confession with the District Court (JA110), which entered it on August 15, 2012. (JA372.)

Nelson attempts to interject a third story into this appeal via his discussion at length of a distinct lawsuit pending in North Carolina between himself and a third party relating to a company known as Alliance. (Def.'s Br. 14–17.) That proceeding, however, is not germane to this appeal. ORL's title to the judgment does not rely on any event in North Carolina. ORL does not have any agreement with parties in the North Carolina proceeding. Nelson has not presented,

-10-

nor does there exist, any indicium of wrongdoing by ORL vis-à-vis that proceeding. To the contrary, Nelson has been the author of much of his own misfortune in the Tarheel State: he prolonged ORL's charging order on its Tennessee judgment there by taking a late appeal in Wisconsin. *See **Orlando***, 2013 WL 2232290, ¶ 2. (*See also* ORL App'x 8–10.)

The essential facts on appeal, then, are not complex: Nelson executed a confession of judgment in favor of RTC. RTC assigned the confession to a purchaser. Nelson's alter-ego, GP, purchased the confession in turn. Nelson then vouched for the confession's validity and used it in his efforts to avoid paying ORL. The confession was transferred by court order from GP to ORL and judgment on it was entered by the District Court. Nelson, after relying on the confession for years, has found himself hoist upon his own petard. His request that this Court defuse the device is fairly characterizable as a new chapter in his "stubborn efforts" to evade obligations.

# SUMMARY OF ARGUMENT

Nelson's brief is, like much that he has filed in nearly three decades of wrangling with ORL, a smorgasbord of misinformation, omission, and petulance. His principal, if implicit, thesis is that he successfully and lawfully swindled RTC in 1993 by giving a worthless and unenforceable confession of judgment in exchange for the dismissal of RTC's $14,000,000 claim against him.

The District Court was correct in disagreeing, however. That court had subject-matter jurisdiction principally because it had never deprived itself of the jurisdiction it obtained via removal in 1991. (*See* JA5.) The record reveals the trial court took the case back up after entering conditional dismissal orders and never entered any subsequent final judgment. Thus, it properly entered at ORL's request the judgment it had never previously entered against Nelson.

ORL properly asked the court to do so because it received the confession via court order in Wisconsin. Nelson cannot impugn ORL's title: he vouched for the title of GP, the confession's prior owner, and the record contains a transfer to that owner, together with a warranty as to the initial transfer from RTC.

Nor can Nelson invoke the statute of limitations. The District Court properly, and at ORL's request, held the limitations period equitably tolled by GP's possession of the confession. Furthermore, judicial estoppel should bar

-12-

Nelson's invocation of the defense, based on his prior sworn, relied-upon statements that the obligation reflected in the confession was valid and outstanding.

The confession itself comports with South Carolina law and applicable principles of equity: Nelson's argument to the contrary fails because he improperly discounts the $14,000,000 liability the confession replaced. Nor need the Court reverse on due-process grounds: Nelson waived this argument by failing to present it below. Furthermore, he was afforded a sufficient hearing in the trial court.

## ARGUMENT

### I.    STANDARD OF REVIEW.

ORL accepts Nelson's articulation of the standards of review, except that he fails to note that the District Court's invocation of equitable tolling warrants review for an abuse of discretion. ***Chao v. Va. Dep't of Transp.***, 291 F.3d 276, 279–80 (4th Cir. 2002); ***Dorell v. Florence Dist. No. One***, 341 S.E.2d 797, 799 (S.C. Ct. App. 1986) (equitable remedies used in court's discretion).

### II.    ORL HAS STANDING TO ENFORCE THE CONFESSION OF JUDGMENT.

Nelson appears to argue that ORL does not actually own the Confession of Judgment and that, as a result, ORL lacks Article III standing. Like many of Nelson's arguments, his recourse to Article III standing appears facially plausible in isolation, but becomes absurd when examined alongside the record. ORL possesses all the standing required to have obtained the judgment below.

#### A.    ORL Was Substituted Without Objection from Nelson.

Nelson has consistently misapprehended the nature of the relevant inquiry on the question of ORL's standing. The District Court noted that ORL filed a motion to substitute, and that the Court, without objection from Nelson, passed on its propriety. (JA423–24.) The District Court did not rule, as Nelson appears to imply, that Nelson had waived an objection to an indisputable defect in subject-

matter jurisdiction. Rather, the District Court noted that it had already adjudicated the factual and legal questions implicated by ORL's Motion to Substitute and that, by virtue of his earlier failure to respond to that Motion, Nelson could not now attack those conclusions. (*See* JA424.)

Obviously, admitting, stipulating to, or failing to contest allegations of fact supporting jurisdiction is not the same thing as attempting to consent to (or waiving objections to) jurisdiction in spite of contrary facts. The permissibility of establishing jurisdictional facts on such a basis has long been beyond peradventure. *See **Pittsburgh, Cincinnati, & St. Louis Ry. v. Ramsey***, 89 U.S. 322, 327 (1874). The rule in ***Ramsey*** is alive and well in this Circuit, even where one party later changes his mind. *See **Meyer v. Berkshire Life Ins. Co.***, 372 F.3d 261, 265 (4th Cir. 2004). Since the District Court's order substituting ORL did not articulate the bases for the ruling, this Court is not free to infer that it committed a legal error. *See **Sprint/United Mgmt. Co. v. Mendelsohn***, 552 U.S. 379, 386 (2008). Regardless, the papers filed in support of the Motion to Substitute provide an adequate (and unrebutted) factual basis for the District Court's ruling. Nelson's late protestation should not be endorsed.

B.   The District Court's Finding that ORL Has Standing Is Not Clearly
     Erroneous: the Record Shows the Confession Was Transferred to ORL,
     and Nelson's Own Testimony Supports ORL's Interest.

Review of the record reveals that the District Court's conclusion that

ORL owns the confession, and thus has standing, was not clearly erroneous: that is,

one reviewing the evidence presented is not "left with the definite and firm

conviction that a mistake has been committed." *Cf. **Simmons v. United Mortg. &***

***Loan Inv., LLC***, 634 F.3d 754, 762 (4th Cir. 2011). On the contrary, the record

establishes that ORL obtained the confession of judgment via the order of the

Wisconsin Circuit Court. (JA100.) *See **Orlando***, 2013 WL 2232290, ¶ 19. The

finality of that order has subsequently been upheld by the Wisconsin Court of

Appeals.[3] *See **id.*** Accordingly, res judicata precludes—or if not applicable yet,

may preclude prior to oral argument in this case[4]—relitigation of the question of

whether the confession passed into ORL's hands. *See **Allen v. McCurry***, 449 U.S.

90, 95–96 (1980); ***Quarles v. Miller***, 86 F.3d 55, 57 (4th Cir. 1996); ***State ex rel.***

***Mitchell Aero Inc., v. Bd. of Review***, 246 N.W.2d 521, 524 (Wis. 1976).

---

[3] Nelson has asked the Wisconsin Court of Appeals to reconsider its decision. He
has thirty days after its decision to seek Supreme Court review. Wis. Stat. Ann.
§ 809.62.

[4] The May 22, 2013, decision by the Wisconsin Court of Appeals was limited to
the question of the timeliness of Nelson's appeal. The court expressly declined to
entertain argument on the merits of the order vesting the confession of judgment in
ORL. *See **Orlando Residence, Ltd. v. Nelson***, No. 2012AP1528, slip op. at 5–6
(Wis. Ct. App. Aug. 21, 2012) (*see* Rule 32.1 Addendum).

-16-

Furthermore, even upon full review, the record vindicates ORL. ORL initially filed the instrument assigning the confession to GP (the "Assignment") and the Wisconsin order transferring the confession to ORL. (JA98–104.) The assignment to GP contains a warranty by the assignor, an entity by the name of Asset Recovery and Management Services, L.P. ("ARMS"), that it owned "all of the interest ever held by the RTC." (JA103.) RTC, of course, was the original beneficiary of the confession and settlement agreement. (JA112.)

Nelson insists that the warranty is inadmissible and incompetent. (Def.'s Br. 34–35.) Nelson is mistaken.[5] The Assignment manifestly "establish[es] or affect[s] an interest in property" and those contents "relevant to [its] purpose" are therefore admissible to prove what they assert. Fed. R. Evid. 803(15). (*See* JA102 ("ARMS hereby assigns to GP … all rights as Plaintiff …, along with all right to payment …, and all collateral ….").) The grantor's warranty of title clearly is "relevant to the … purpose" of such a document. Nelson's claim that Rule 803 contains a hidden exception for such warranties is false: of the cases on which he relies, one found a particular warranty not inadmissible because a warranty, but unreliable and the document containing it outside the scope of 803(15), *see **Rock River Commc'ns, Inc. v. Universal Music Group, Inc.***, 807 F. Supp. 2d 917, 923

---

[5] Nelson also waived this argument by failing to challenge the document's admissibility below. *E.g.*, ***Robinson v. Equifax Info. Servs., LLC***, 560 F.3d 235, 242 (4th Cir. 2009).

n.10 (C.D. Cal. 2011), and the other has nothing to do with the topic, *see generally*

***Societe Comptoir De L'Industrie Cotonniere v. Alexander's Dep't Stores***, 190 F.

Supp. 594 (S.D.N.Y. 1961). In fact, recitals fall within Rule 803(15)'s exception.

***McGuire v. Walker***, 423 S.E.2d 617, 619 (W.Va. 1992) (applying identical state

rule). GP's long and undisputed possession of the confession buttresses its

predecessor's claim.[6] The District Court thus did not err in granting ORL's motion

to substitute.

Material filed after ORL's substitution only reinforces ORL's standing.

The record contains Nelson's own testimony that GP, a company under his

dominion and control, owned the confession. *See supra* at 9–10. (*See also*, JA146.)

The Wisconsin Circuit Court relied upon that testimony when it transferred the

confession to ORL. (JA100–01.) That testimony, and the estoppel flowing from it,

*see* Part VII(D), *infra*, certainly suffice to prove GP's title. Nelson presents no

authority for the proposition that ownership cannot be proven in this manner;

---

[6] Nelson's argument that ARMS' refusal to provide a certification from RTC vitiates its warranty also lacks merit. (*See* Def.'s Br. 34–35; JA103.) In November 1995, RTC was just over a month from closing, *see* 12 U.S.C. § 1441a(m)(1) (1994); it would thus be unsurprising if ARMS could not have obtained a signature from it. Regardless, saying "I will not give you a hamburger" is not equivalent to saying "I own no hamburgers." Nelson's reference to 12 U.S.C. § 1823(e) fares little better. This provision allows bank regulators to avoid side agreements when collecting bank debts. *E.g.*, ***Point Developers, Inc. v. F.D.I.C.***, 961 F. Supp. 449, 456–57 (E.D.N.Y. 1997). Since ORL is RTC's successor, not its opponent, the avoidance rule, if applicable at all, actually benefits ORL. *See id.*; ***Porras v. Petroplex Sav. Ass'n***, 903 F.2d 379, 381 (5th Cir. 1990).

indeed, courts regularly issue such rulings. *See, e.g.*, ***Usry v. Price***, 325 F.2d 657, 659 (5th Cir. 1963); ***FleetBoston Fin. Corp. v. Alt***, 688 F. Supp. 2d 277, 280 (D. Mass. 2009); ***In re Atravasada Land & Cattle, Inc.***, 308 B.R. 255, 276 (Bankr. S.D. Tex. 2008); ***In re Gaye-Joy Corp.***, 84 B.R. 235, 237 (Bankr. M.D. Fla. 1988). Moreover, GP's possession of the confession creates a presumption of title in Wisconsin. *See* ***In re James Estate***, 65 N.W.2d 9, 17 (Wis. 1954). Nelson has never offered actual evidence that GP lacked that title; he has merely attempted to impugn it through sly implications. That will not suffice in light of his own admissions. GP owned the confession, the Wisconsin court transferred it to ORL, and ORL therefore has standing.

C.    Nelson Cannot Destroy ORL's Interest in the Confession of Judgment by Pointing Out Technical Drafting Peccadilloes in the Wisconsin Court Record.

As the last arrow in his quiver, Nelson claims that the Wisconsin court's order did not vest the confession of judgment in ORL, since it describes the thing conveyed using the term "judgment," and a confession of judgment, until entered, is not itself a "judgment." This argument pronouncedly lacks merit.

First, the Wisconsin order attached the assignment through which GP acquired the confession. (JA100.) The court expressly transferred what GP obtained via that assignment. (*Id.*) That is, it transferred the confession.

-19-

Nelson does not dispute that the Wisconsin court sought to extract the confession from GP and vest it in ORL. (*See* JA100.) Nor does Nelson suggest that there is some other interest, some actual judgment, to which the Wisconsin order was actually referring. All Nelson has is a drafting imprecision by a Wisconsin judge writing about an instrument that was not in his record and that he described using a word by which Nelson himself had described it. (*Compare* JA100 *with* JA146 at 18–20.)

Nelson forgets that "[t]echnicalities are instruments in the hand of justice to serve her ends, not cords to bind her." ***Lowry v. S. Ry. Co.***, 101 S.W. 1157, 1160 (Tenn. 1907). It is, likewise, a principle of venerable age that *de minimis non curat lex*: the law is not concerned with trifles. *See, e.g.*, ***LeRoy Dyal Co. v. Allen***, 161 F.2d 152, 156 (4th Cir. 1947). These principles apply with substantial force to instruments and court orders. It has always been the courts' preference to enforce these rather than "destroy them on technical grounds." ***Sumter Tobacco Warehouse Co. v. Phoenix Ins. Co.***, 56 S.E. 654, 656 (S.C. 1907). *Accord, e.g.*, ***Publicis Commc'n v. True N. Commc'ns, Inc.***, 206 F.3d 725, 730–31 (7th Cir. 2000); ***United States v. Bonilla-Montenegro***, 331 F.3d 1047, 1049 (9th Cir. 2003); ***United States v. Nichols***, 169 F.3d 1255, 1280 (10th Cir. 1999); ***Nat'l Biscuit Co. v. Litzky***, 22 F.2d 939, 943 (6th Cir. 1927); ***United States v. Bennett***, 825 F. Supp. 1512, 1530–31 (D. Colo. 1993); ***RM 18 Corp. v. Aztek***

*Assocs., L.P. (In re Malease 14FK Corp.)*, 351 B.R. 34, 39–40 (E.D.N.Y. 2006); *Lee v. Storfer*, 156 S.E. 177, 179 (S.C. 1930); *Town of Washburn v. Washburn Waterworks Co.*, 98 N.W. 539, 543 (Wis. 1904); *Rollins v. Kahn*, 29 N.W. 640, 641–42 (Wis. 1886). Even if the Wisconsin court's order were ambiguous (which it is not), and even were it irremediably so (which it is not), this Court would still be required to interpret it as a whole and to effectuate the Wisconsin judge's intent. *See Cashin v. Cashin*, 681 N.W.2d 255, 259–60, 262 (Wis. Ct. App. 2004). That intent was manifestly to transfer the confession to ORL. (*See, e.g.*, JA100.)

Accordingly, Nelson's panoply of arguments regarding standing and the insufficiency of the Wisconsin Circuit Court's June 2011 orders must be rejected.[7] ORL has more than sufficient standing to provide the District Court with jurisdiction.

---

[7] Nelson advances a number of arguments that, if accepted, would have the practical effect of negating the June 7, 2011, Wisconsin order. The federal courts lack jurisdiction to entertain such claims from plaintiffs. *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997). Although Nelson advances his positions as a defendant, the same federalism and comity concerns counsel against extending such relief, *see S&T Bank v. Zokaites*, No. 10-1748, 2011 WL 1298171 (W.D. Pa. March 31, 2011), even if not strictly on jurisdictional grounds, *see Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1330–31 (11th Cir. 2010).

III.   THE DISTRICT COURT HAD SUBJECT-MATTER JURISDICTION
       OVER THE PROCEEDING BELOW.

    A.   The District Court Possessed Subject-Matter Jurisdiction, and
       Subsequent Events Do Not Deprive a District Court of Jurisdiction
       Previously Acquired.

The District Court acquired jurisdiction over the proceeding below in 1989, when the FSLIC, acting as the conservator for Independence Federal, removed it from the South Carolina Court of Common Pleas for Beaufort County. (JA5, 71.) At that time, 12 U.S.C. § 1730(k)(1) made any action to which the FSLIC was a party a case within the district courts' federal-question jurisdiction. Subsequently, RTC was substituted for FSLIC. (*See* JA67–68.) *See also* 12 U.S.C. § 1441a(*l*)(2) (1994). While the District Court likely retained jurisdiction pursuant to **De La Rama S.S. Co. v. United States**, 344 U.S. 386 (1953), it clearly did so under 12 U.S.C. § 1441a(*l*)(1) (1994). The FDIC later succeeded to RTC's role and interest, *id.* § 1441a(m)(1), although it was not formally substituted below. The federal courts have jurisdiction over actions to which the FDIC is a party. 12 U.S.C. § 1819(b)(2).

The general rule, of course, is that "the jurisdiction of the [federal courts] depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events." **Mollan v. Torrance**, 22 U.S. (9 Wheat) 537, 539 (1824); *see In re XMH Corp.*, 647 F.3d 690, 693 (7th Cir. 2011) ("[T]here is nothing problematic about substituting a party into a litigation

because it has succeeded to the interest of the original party. . . . [W]hen a case is within federal jurisdiction when filed, later events . . . do not . . . deprive the federal court of jurisdiction."). Thus, the substitution of ORL as a plaintiff did not strip the District Court of jurisdiction. *See Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011); *Adair v. Lease Partners, Inc.*, 587 F.3d 238, 245 (5th Cir. 2009).[8] Thus, the District Court has retained subject-matter jurisdiction since the dispute's inception.

B.    The Parties Are, Regardless, Completely Diverse.

Nelson claims in his brief before this Court that the District Court lacked subject-matter jurisdiction under 28 U.S.C. § 1332 because the record does not contain a sworn statement establishing ORL's citizenship. (Def.'s Br. 1.) Notably, however, Nelson does not claim that diversity is absent. Nelson refrains from making this claim because he knows it would be false. Nelson knows himself to be a citizen of Wisconsin, and the record contains his sworn testimony that ORL's sole principal, Samuel Hardage, is a California resident. (*See* JA389.)

---

[8] There is split among circuits over whether a District Court retains original jurisdiction or only supplemental jurisdiction in this context following the dismissal of the federal corporation. *See Destfino*, 630 F.3d at 958 (discussing division). Since Nelson did not move to remand, but claimed only that no jurisdiction existed at all, this case does not present the Court with an opportunity to weigh on the matter.

Since Nelson has never challenged the accuracy of ORL's assertion of diversity, this is not a case in which the "plaintiff's allegations of jurisdictional facts [have been] challenged by the defendant." *See **Thomson v. Gaskill***, 315 U.S. 442, 446 (1942). It was thus not incumbent on ORL to present actual sworn testimony—beyond Nelson's—on the topic. *Cf. **id.*** The District Court thus possessed a separate basis for jurisdiction, as noted in its Order. (JA422.)

    C.   The District Court Did Not Lose Jurisdiction Over the Proceeding Below Via Entry of a Final Judgment.

Nelson claims that the District Court dismissed him from the action below, terminating its jurisdiction, and that the filing of the confession of judgment is merely an improperly filed new action. (*E.g.*, Def.'s Br. 18–21.) This view is erroneous. The record demonstrates that no final judgment terminated the proceedings below. Even a cursory examination of the course of events reveals as much:

<u>**July 13, 1993**</u>: The District Court filed an Order of Dismissal providing that this action could be reopened if the settlement were not consummated within ninety days. (JA49.)

    <u>**October 14, 1993:**</u> The District Court filed a second Order of Dismissal providing that the case might be reopened if the settlement were not consummated

and the contemplated foreclosure sale were not completed on or before December 31, 1993. (JA49–50.)

**January 24, 1994**: The settlement and the foreclosure sale were not consummated by December 31, 1993.  On January 24, 1994, the District Court held a hearing to address a Motion to Clarify filed by RTC. (JA52.)

**March 15, 1994:** The District Court filed an Amended Order of Foreclosure in which, *inter alia*, it set April 19, 1994 as the deadline by which the foreclosure sale must be consummated. (JA54.)

**June 22, 1994:** The United States Marshal filed a Report of Sale in connection with the April 19, 1994, foreclosure sale. (*See* JA11.)

**July 5, 1994**: The District Court filed an Order confirming the Marshal's Report of Sale. (JA59–60.)

**November 17, 1994**: The District Court filed an Order granting a consent motion to discharge the receiver and to cancel the receiver's bond. (JA61–64.)

**May 21, 1997**:  Counsel for Kenneth E. Nelson filed Wallace Hustad's Confession of Judgment in the amount of $4 million in the District Court on behalf of Ruth Hustad. (*See* JA66–93, 225.)

Clearly, the July and October orders were either not final, or the District Court reopened the case following each on its own motion. *See **Quincy V, LLC v.***

*Herman*, 652 F.3d 116, 121 (1st Cir. 2011). The District Court properly entered the October 14, 1993, Order, (even though it came two[9] days after the deadline in the July 13 Order) just as it properly conducted the 1994 proceedings, received the 1997 confessed judgment, and entered Nelson's confessed judgment. While the District Court may have hoped to be rid of the parties in October of 1993, it cannot fairly be said that its October Order was one "by which [the] District Court disassociate[d] itself from [the] case." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009). To the contrary, the Order reflects substantial ambiguity about the case's termination (*e.g.*, "It is the Court's expectation that . . .").

It has long been accepted that an order of dismissal that leaves open an avenue for revivifying the proceeding lacks finality. Thus, where a district court grants a motion to dismiss, but grants the plaintiff permission to file an amended complaint within a specified period of time, the order of dismissal is not final and does not become final simply by the lapse of the specified period. *Jung v. K&D Mining Co.*, 356 U.S. 335, 336–37 (1958); *accord, e.g.*, *Groves v. City of Darlington*, 346 F. App'x 965, 966 (4th Cir. 2009).

Nor is this action analogous to others in which the Courts of Appeal have ruled that sixty-day dismissal orders ripened into final judgments. *Cf., e.g.*, *Lewis v. B.F. Goodrich Co.*, 850 F.2d 641, 642–43 (10th Cir. 1988). In those

---

[9] Monday, October 11, 1993, was Columbus Day.

cases, there was no case activity prior to the lapse of the sixty-day period. *See e.g.*, *id.*; ***Berke v. Bloch***, 242 F.3d 131, 134 (3d Cir. 2001). Here, by contrast, the parties' ongoing filings, and the District Court's ongoing rulings, during the sixty-day period reveal that no one actually regarded the case as over. The District Court implicitly reopened the case, something it was indisputably able to do. *See **Quincy V***, 652 F.3d at 121. Nelson made no attempt below and makes no attempt here to explain how the District Court entered the 1994 orders if it lost jurisdiction on December 31, 1993.

The point may be further reinforced. Indisputably, the District Court never entered any separate judgment, nor did the clerk ever note one on the docket. (*See* JA11–15.) *See also **Caperton v. Beatrice Pocahontas Coal Co.***, 585 F.2d 683, 689 (4th Cir. 1978). Nor would a settlement predicated on a confession of judgment apparently drafted to be filed in the original proceeding have much value if that proceeding had already been terminated by an earlier final judgment. Certainly the Appellant's counsel had an objectively reasonable good-faith basis for filing Mr. Hustad's confessed judgment in 1997. *See* Fed. R. Civ. P. 11. (*See also* JA66–93, 225.) The District Court did not enter a final judgment in 1993. It thus retained the power to do so by entering judgment on Nelson's confession.

Nelson attempts to rely, as he did below, on the Supreme Court's holding in ***Kokkonen v. Guardian Life Insurance Co. of America***, 511 U.S. 375,

381 (1994). But **Kokkonen** is wholly inapt, for reasons found on the face of the opinion: "It must be emphasized that what respondent seeks in this case is enforcement of the settlement agreement, and not merely reopening of the dismissed suit by reason of breach of the agreement that was the basis for dismissal." **Id.** at 378. There, the plaintiff attempted to litigate a garden-variety claim for breach of contract under an existing federal docket number on the basis that the contract was the settlement agreement pursuant to which the federal action had been terminated. **Id.** at 381.

ORL, of course, is not attempting to litigate a claim for breach of contract. Even if the liability under the confession were primarily one for breach of the settlement agreement, **Kokkonen** is not applicable because the original action was not terminated. ORL finds itself, rather, in a situation even more advantageous than one from which Justice Scalia distinguishes **Kokkonen**. *See id.* at 378.[10] ORL has simply taken back up a quiet but never-terminated lawsuit for the purpose of bringing it to a never-before-achieved conclusion. Defendant's attempt to rely on **Kokkonen**, then, should be rejected.

---

[10] **Kokkonen** references reopening under Rule 60(b)(6). Since the confession took the place of the liability on which Nelson was originally sued, and it is the confession that ORL sought to enforce below, the District Court had the power to reopen under Rule 60(b)(6), *see* **Fairfax Countywide Citizens Ass'n v. Fairfax County**, 571 F.2d 1299, 1302 (4th Cir. 1978), *cited in* **Kokkonen**, 511 U.S. at 378, which it could utilize implicitly, *see* **Quincy V**, 652 F.3d at 121, assuming a prior final judgment.

Nelson also suggests that ORL's argument is undermined by its failure to serve the motion to substitute on his attorneys under Rule 5(b)(1). (Def.'s Br. 45.) But Nelson's South Carolina attorneys, who first appeared in 1989, were, by all appearances, served via the ECF. *See* CM/ECF Query Attorneys, *Indep. Fed. et al. v. Hilton Head Investors*, No. 9:89-cv-662, https://ecf.scd.uscourts.gov/cgi-bin/qryAttorneys.pl?128355 (last accessed May 20, 2013). (*See* also JA12–13.) Counsels' e-mail addresses were apparently incorporated into all cases automatically in 2005. *See **In re: Elec. Case Filing Policies and Procedures***, No. 3:05-MC-5003-17 (D.S.C. Feb. 18, 2005). Thus, while the certificates of service on the confession and motion to substitute are incomplete, it seems that Nelson's attorneys were served within the meaning of Rule 5(b)(1).

IV.   THE DISTRICT COURT HAD PERSONAL JURISDICTION OVER NELSON.

Nelson's argument that the District Court lacked personal jurisdiction over him lacks merit for a number of reasons. First, it is predicated on a misrepresentation of the record. Nelson was not dismissed from the action below in 1993. (*Cf.* Def.'s Br. 47.) As discussed in Part III(C), *supra*, the District Court never terminated that proceeding through a final order of dismissal. Nor is there any order dismissing Nelson individually. Nelson's failure to provide a record citation for his bald assertion that he was dismissed betrays as much. Since the

action below remained pending in the District Court, new service under Rule 4 was neither necessary nor possible.

Moreover, Nelson consented to the personal jurisdiction of the District Court when he executed the settlement agreement and confession of judgment. *See **Alland v. Consumers Credit Corp.**, 476 F.2d 951, 954 (2d Cir. 1973) (defendant consents to personal jurisdiction of court to which confession made); *see also **Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee**, 456 U.S. 694, 703 (1982). The settlement agreement provides that the confession of judgment will be "in a form suitable for recording with the Clerk of Court for the United States District Court for the District of South Carolina." (JA76.) The confession itself lists the District Court at the top of its first page. (JA112.) Nelson expressly consented to the precise procedure followed by ORL.

Finally, Nelson waived objections to the District Court's personal jurisdiction by appearing below without initially contesting personal jurisdiction. *See **Bethlehem Steel Corp. v. Devers**, 389 F.2d 44, 46 (4th Cir. 1968). Nelson presented arguments on the merits, rather than merely jurisdictional defenses, in his initial filings. (*See* Dkt. 134-1 at 3–14.)   Nelson consented thereby to the court's exercise of personal jurisdiction. ***Maybin v. Northside Corr. Ctr.***, 891 F.2d 72, 74–75 (4th Cir. 1989) (finding no jurisdiction on particular facts); ***Sec. Mgmt., Inc. v. Schoolfield Furniture Indus., Inc.***, 272 S.E.2d 638, 639 (S.C. 1980).

V.    ORL'S USE OF THE CONFESSION OF JUDGMENT WAS
        PROCEDURALLY APPROPRIATE.

It cannot seriously be contested that the federal courts are empowered to enter confessed judgments, even though such confessions are not themselves products of federal law. Title 28 explicitly authorizes the entry of judgment on a confession. *See* 28 U.S.C. § 1874. Searches across reported and unreported federal decisions reveals dozens of cases in which the federal banking-insurance corporations alone have utilized confessed judgments. *See, e.g.*, ***F.D.I.C. v. Deglau***, 207 F.3d 153 (3d Cir. 2000); ***R.T.C. v. Forest Grove, Inc.***, 33 F.3d 284 (3d Cir. 1994); ***R.T.C. v. Koock***, 867 F. Supp. 284 (E.D. Pa. 1994). The courts enter these where the law permits their operation, *see, e.g.*, ***Deglau***, 207 F.3d at 159–60. The law of South Carolina so permits. *See* S.C. Code Ann. § 15-35-350 ("A judgment by confession may be entered without action . . . .").

A.    ORL Properly Filed the Judgment in the Action Below.

Nelson's entire argument on the propriety of the procedure followed by ORL presupposes that his prior argument—that the proceeding below was terminated by a final judgment in October 1993—is correct. (*See* Def.'s Br. at 39–41.) But it makes little sense to insist that a complaint, process, and a trial were necessary in an action in which a complaint was filed (*see* JA17–48), process issued, a trial avoided by the agreement of the parties, and no final judgment

entered. *See* Part III(c), *supra*. Nelson was properly brought before the District Court when the FSLIC removed the action in 1989. His discourse on Rules 2 and 3 and his citation of ***Scanlon***, a case involving the proper method for challenging tax-lien distraints, *see **N.H. Fire Ins. Co. v. Scanlon***, 362 U.S. 404 (1960), do not change that fact.[11]

Nelson cites to a number of cases for his claimed proposition that recovery on confessed judgments may only be obtained via a distinct complaint. But as the District Judge aptly observed, these cases involve discrete factual and legal scenarios that bear little resemblance to those at issue in the case *sub judice*. (*See* JA425–26 ("the state substantive law that applied in the *Boosalis* case barred the entry of the confession of judgment"). The authorities cited by Nelson before this Court, including the already distinguished ***Boosalis Options, LP v. Farnbacher Loles Motorsports, LLC***, No. C09-80316, 2010 WL 335651 (N.D. Cal. Jan. 22, 2010), are no more relevant here than below. (*See* JA425–26.)

Any statistical preference towards the entry of confessed judgments in discrete actions appears to be merely happenstance: a review of available cases shows the confessions at issue in most were executed at the same time a borrower

---

[11]  Likewise, Nelson's assertion that federal law categorically prohibits all "summary proceedings" is false, especially if one adopts Nelson's definition of "summary" as "with[out] a full trial." (Def.'s Br. 40.) *See, e.g.*, Fed. R. Civ. P. 56. Indeed, Nelson's own authorities reveal as much. *See **S.E.C. v. Secs. Investor Protection Corp.***, 842 F. Supp. 2d 321, 326 (D.D.C. 2012) (finding a particular summary proceeding authorized by statute).

incurred a debt, which the creditor then sought to collect via the confession. *See, e.g.*, ***Koock***, 867 F Supp. at 286. But the procedure used by RTC in this action—the substitution of a confession for a previously existing debt already sued on—is not unique. *See **J.D. Holdings, LLC v. BD Ventures, LLC***, 766 F. Supp. 2d 109, 113–14 (D.D.C. 2011) (involving facts almost identical in relevant respect to those at bar). Nelson has presented no authority for the proposition that a lawsuit, properly commenced and never terminated, cannot be concluded via a confessed judgment. In this context, the procedure below was appropriate.

      B.   Nelson's Arguments Regarding Due Process Are Improperly Presented for the First Time on Appeal.

This Court has affirmed that it adheres to the universal principle of declining to entertain arguments not presented to the inferior court. *E.g.*, ***Robinson***, 560 F.3d at 242; ***U.S. Dep't of Labor v. Wolf Run Mining Co.***, 452 F.3d 275, 283 (4th Cir. 2006); ***Karpel v. Inova Health Sys. Servs.***, 134 F.3d 1222, 1227 (4th Cir. 1998). Such arguments generally warrant the Court's attention only in the unusual circumstance where refusing to entertain them would result in a "fundamental miscarriage of justice." ***Wolf Run Mining***, 452 F.3d at 283. Constitutional arguments are not immune from waiver. *See, e.g.*, ***Holland v. Big River Minerals Corp.***, 181 F.3d 597, 605–07 (4th Cir. 1999); ***United States v. Payne***, 81 F.3d 759, 764 (8th Cir. 1996); *accord **Muller v. Jackson Hole Mtn. Resort Corp.***, 210 F.

App'x 792, 795 (10th Cir. 2006). That waiver may result from failing to raise an argument in a post-judgment motion if that was the appropriate vehicle for presenting it in the trial court. *See **Willis v. Lepine***, 687 F.3d 826, 840 (7th Cir. 2012).

Nelson presented a Motion to Strike (JA116–18), a Motion to Stay (JA375–77), a Motion to Alter or Amend, Vacate, and Dismiss (JA373–74), memoranda in support (Memo. in Supp., Dkt. 134-1; Memo. in Supp., Dkt. 155-1; Memo. in Supp., Dkt. 156-3), replies (Resp. [sic] in Supp. of Mot. to Strike, Dkt. 142; Reply to Resp. to Mot. to Alter, Dkt. 160; Reply to Resp. to Mot. to Stay, Dkt. 161), responses to ORL's filings (Resp. in Supp., Dkt. 142; Resp. in Opp'n to Mot. to Enforce, Dkt. 143), and a surreply to ORL's Motion to Enforce. (Dkt. 146-1.) In none of them did he urge the District Judge to act or refrain from acting in a particular manner out of regard for his due-process rights. Neither the term "due process" nor any reference to any portion of the Bill of Rights appear in the briefs Nelson presented below. This Court should thus regard this line of reasoning as waived and decline Nelson's invitation to consider it.

C.    Nevertheless, Nelson Waived Pre-Judgment Hearing.

The District Court correctly ruled that "confessions of judgment may be properly entered without notice of hearing" when executed voluntarily, knowingly, and intelligently. (JA426.) The confession "authorizes entry of judgment against"

Nelson. (JA112.) The confession thus obviated the need for a hearing on the topic,[12] and the District Court's finding that Nelson executed it voluntarily, knowingly, and intelligently is not clearly erroneous. (*See* JA427, 87.) *See also Jordan*, 20 F.3d at 1272 (sufficiency of waiver fact question); *supra* at 6–7. Nor does Nelson assert otherwise.

> D.   Even if His Due-Process Arguments Were Not Waived, Nelson Was
>       Properly Served and Was Given a Full Opportunity to Assert Defenses
>       in the District Court.

The Court should reject Nelson's due-process arguments regardless of whether they are held waived and for reasons beyond his meaningful consent to the confession of judgment.

> 1.   The Fourteenth Amendment Does Not Apply.

For reasons wholly unfathomable, Nelson maintains that the District Court's actions infringed upon his due-process rights under the Fourteenth Amendment. (*See* Def.'s Br. 44–45.) As the Court knows, however, the due-process clause of the Fourteenth Amendment begins "[n]o State shall . . . ." U.S. const. amend. XIV, § 1. The United States District Court for the District of South

---

[12] Entry of judgment without a prior hearing on the merits is the fundamental purpose of a confession of judgment. Nelson's insinuation that a confession must separately and expressly waive pre-judgment hearing is erroneous. *See, e.g.*, ***D.H. Overmyer Co. v. Frick Co.***, 405 U.S. 174, 180–81 (1972) (no express mention of hearing in valid cognovit); ***Jordan v. Fox, Rothschild, O'Brien & Frankel***, 20 F.3d 1250, 1273–74 (3d Cir. 1994) (same).

Carolina is neither a State, nor an organ of a State. The Fourteenth Amendment does not apply to its actions. *See, e.g.*, *Taylor v. United States*, 320 F.2d 843, 846 (9th Cir. 1963).[13]

> ### 2.    Nelson Received Notice and Was Afforded Ample Opportunity to Present Defenses.

But even liberally construed as a claim under the Fifth Amendment, Nelson's argument lacks merit. Nelson received notice of the proceedings, appeared, and presented extensive arguments. They simply happened to be arguments the District Court properly rejected. This is not a deprivation of due process.

Nelson obtained precisely what he claims he should have received: pre-judgment and post-judgment inquiry into the merits. (*Cf.* Def.'s Br. 45.) He received a pre-judgment hearing, even though he had waived it. (*See* JA14.) He then advanced arguments new and old via post-judgment motions. (JA373–74.) He also requested a stay pending that motion's resolution. (JA375–77.) Thus, the process afforded Nelson in this regard exceeds that found sufficient in other confession cases. *See, e.g.*, *Aaronian*, 93 F.3d at 640–41; *Atl. Leasing & Fin., Inc. v. IPM Tech., Inc.*, 885 F.2d 188, 192 (4th Cir. 1989); *cf. Choi v. Kim*, 50 F.3d

---

[13] Nelson has not contended that South Carolina's laws or processes for confessions of judgment themselves violate the Fourteenth Amendment, simply that the District Court's actions did. *Cf. F.D.I.C. v. Aaronian*, 93 F.3d 636, 640 (9th Cir. 1996).

244, 249–50 (3d Cir. 1995). Clearly, then, Nelson did not suffer any deprivation without due process.

### 3.    The Judgment Has Not Deprived Nelson of Any Property.

Nelson insinuates that he suffered a deprivation of property prior to the District Court's March 15 Order. (Def.'s Br. 45–46.) Tellingly, Nelson fails to identify any property of which he has been deprived. In reality, however, Nelson lost no property as a result of the judgment below prior to the District Court's rejection of his post-judgment motions.

ORL has obtained property via execution only pursuant to a North Carolina charging order against Nelson's interest in Alliance. (ORL App'x 16.) However, since May 12, 2011, (before ORL filed the confession below) Nelson's interest in Alliance has been subject to a prior charging order arising from ORL's Tennessee judgment. (*Id.* 2–3.) That order, requiring Alliance to pay into court all distributions owed Nelson, has remained in force pending final resolution of Nelson's appeal in Wisconsin. (*Compare id.* Ex. 2 *with* JA 94–95.) Thus, Nelson has now no less than he would have had if the judgment had never been entered: a right to seek return of funds owed. Since the prior order had already deprived him of this property, *see* ***Chernin v. Welchans***, 641 F. Supp. 1349, 1351 (N.D. Ohio 1986), Nelson has not suffered a due-process injury, and his claim that he has must be—for this additional reason—rejected.

VI.  NELSON WAS JOINTLY AND SEVERALLY LIABLE FOR A DEBT IN
     EXCESS OF $14 MILLION: HIS CONFESSION DOES NOT IMPOSE AN
     IMPERMISSIBLE PENALTY.

Nelson claims that the $4 million for which he executed the confession of judgment in favor of RTC is actually an impermissible penalty that greatly exceeds the amounts he otherwise owed. His argument, however, is merely a shell game. It was properly rejected by the District Court and should likewise be rejected by this Court.

The record is clear that Nelson was a joint and several unconditional guarantor of promissory notes with an original principal value over $7 million. (JA69, 70.) It is equally undisputed that the notes were in default, (JA70–71) and that the amount outstanding in June 1993 approached $14.5 million (JA75). The settlement agreement called for Nelson and Hustad each to pay $80,000 and cooperate in a foreclosure auction. (JA10–12.) RTC, for its part, agreed to compromise its $14.5 million claim down to a contingent $4 million liability on a confession of judgment, which would be entered and collected if the other payment terms were not fulfilled. (JA10–11.)

Manifestly, then, the confession of judgment represents a contingent $4 million liability substituted in place of a contingent $14 million liability, not merely a $4 million penalty for partial nonpayment of $80,000. The District Court correctly concluded that an agreement to pay 27.5% of a debt already owed does

not create an unenforceable penalty.[14] (*See* JA432.) Especially in light of the fact that the confession's contingency (payment of $80,000) was entirely within Nelson's own control, it is wholly implausible to regard the confessed liability as penally over-sized.[15] Moreover, the confession itself bears Nelson's sworn statement that the $4 million is "just and due." (JA113.) But the existence of the $14 million liability, even considered in light of Nelson's supposed defenses, for which the confession was substituted makes the latter's propriety indisputable. *See* S.C. Code § 15-35-350.

Nelson, by contrast, insists that the $4 million confession of judgment can be compared only to the $80,000 non-contingent liability imposed by the settlement agreement, since that agreement extinguished the underlying guaranty claim. (Def.'s Br. at 49–50.) This is merely sleight of hand.

Nelson executed the confession as part of the settlement process, although he signed the confession before the settlement agreement and over three

---

[14] Likewise, Nelson's claim that the confession violates S.C. Code § 15-35-360(3) by permitting judgment in excess of liability (Def.'s Br. 48–49) fails for this same reason, as well as because Nelson agreed in the Settlement Agreement to the contingent debt found in the confession. (*See* JA431, 76–77.)

[15] Thus, the fact that the settlement agreement contains a standard recitation that the parties do not admit liability (*see* JA81) has no bearing on the question before the Court. First, the same agreement recites that the debt is owed and that Nelson guaranteed it. (JA70.) Second, Nelson did not demonstrate below, has not demonstrated here, and could not hope to demonstrate that, even when discounted in light of the litigation contingency, the value of the guaranty debt was not at least permissibly proportionate to the confession's value.

months before RTC accepted it. [16] (*Compare* JA113 *with* JA85 *and* JA86.) Clearly, the actual stakes in play were not the mere $80,000 and miscellaneous considerations called for under the settlement, but RTC's $14 million underlying claim. The situation, then, is wholly dissimilar from the liquidated-damages authorities relied upon by Nelson. The confession is not simply an approximation of RTC's loss in the event Nelson failed to make the settlement payments, but rather a substitution for his $14 million liability under the guaranty, converted into a tidy, marketable, readily collectable form.

But even if one were to view the confession of judgment as a species of liquidated-damages mechanism, a replacement for RTC's damages, Nelson's characterization fails. Omission of the guaranty claim from the calculation of the value of the settlement requires one to ignore the vast majority of the consideration at issue. *See, e.g.*, *Theodore v. Mozie*, 95 S.E.2d 173, 176 (S.C. 1956); *Greer Bank & Trust Co. v. Waldrop*, 151 S.E. 920, 922 (S.C. 1930) (both reiterating that loss or forbearance constitutes consideration). By executing the settlement, RTC gave up, in exchange for certain performances by Nelson, the right to seek collection of $14 million. When Nelson failed to perform, he deprived RTC of the benefit of that bargain. *Cf. Fireman's Ins. Co. of Newark, N.J. v. State Farm Mut. Auto. Ins. Co.*, 370 S.E.2d 85, 90 (S.C. 1988). He effectively caused RTC to give up its

---

[16] Thus, at the time he executed the confession, the $14 million liability had not been extinguished.

$14 million claim for a mere fraction of the consideration for which RTC had bargained.

It borders on the absurd to say that a party cheated out of the right to obtain a $14 million judgment suffered only a $64,000 injury. Undoubtedly, if RTC had sought rescission, *see Brazell v. Windsor*, 682 S.E.2d 824, 827–28 (S.C. 2009), damages for unjust enrichment, *see JASDIP Props. SC, LLC v. Estate of Richardson*, 720 S.E.2d 485, 488 (S.C. Ct. App. 2011), or reinstatement of its claim in order to return it to its pre-settlement position, *see Nashville Lodging Co. v. R.T.C.*, 59 F.3d 236, 245–46 (D.C. Cir. 1995), Nelson's assessment of the value of the settlement agreement would be substantially different.

Thus, Nelson's argument that the confession of judgment constitutes an unlawful penalty fails for being predicated on a fundamentally flawed interpretation of the settlement. But even accepting Nelson's basic premise, his argument lacks merit because it fails to account for the full range of consideration and value at issue in the settlement agreement.

## VII.   NELSON DOES NOT HAVE A DEFENSE BASED ON THE STATUTE OF LIMITATIONS.

### A.   The District Court Raised No Issue *Sua Sponte*.

Nelson goes to great lengths in his brief asserting that the District Court *sua sponte* raised a defense on ORL's behalf.[17] Nelson whitewashes this argument with the appearance of plausibility by attempting to erect a host of artificial divisions between doctrines. ORL maintained below that the District Court should utilize its equitable powers to prevent Nelson from invoking the statute of limitations as a defense to the confessed judgment. (*See* JA215.) The District Judge agreed, on almost the precise same grounds, albeit in slightly different terms. (JA434–36.)

The District Court wrote, "Even assuming a statute of limitations does apply in this case, . . . ORL's filing of Nelson's confession of judgment is timely because the three-year statute of limitations is equitably tolled by the length of time that GP Credit, Inc. [*sic*] held Nelson's confession of judgment."[18] (JA432, 434.) ORL argued below that "[n]o statute of limitations could run during the period that

---

[17] Some of Nelson's citations in support of this argument are mystifying. Nelson states, for instance, that "ORL . . . did not raise South Carolina equitable tolling." (Def.'s Br. 54.) His record citations include footnote 1 of ORL's Response to Nelson's Motion to Strike. (*Id.*) That footnote reads "Orlando does not object to Nelson's filing of a surreply." (JA349.)

[18] The District Court was correct to preface its discussion with "even assuming," because, in fact, no statute of limitations applies here.  A statute of limitations governs the time in which a party must file a lawsuit.  Here, ORL did not file a lawsuit; rather, it filed a confession of judgment in an already existing lawsuit.

Nelson's alter ego, GP Credit Co., LLC ('GP Credit') held the judgment against him . . ." (JA215; *see also* JA409 (stating ORL's reliance on earlier briefing).) Nelson's claim, then, that the District Judge created an argument for ORL out of thin air lacks all credibility.

Certainly, ORL described the tolling mechanism in question as "adverse domination" and relied upon federal case law, including two opinions of this Court, and the *Fletcher Cyclopedia of Corporations*.[19] (JA215.) But adverse domination is merely a species of equitable tolling concerning rights held by corporate entities that a defendant controls. *See **R.T.C. v. Hecht***, 818 F. Supp. 894, 898–99 (D. Md. 1992). Indeed, this Court's adverse-domination opinions that ORL cited below say almost the same thing as the South Carolina Court of Appeals opinion quoted by the District Court. *Compare **F.D.I.C. v. Cocke***, 7 F.3d 396, 402 (4th Cir. 1993) ("doctrine rests on the theory that if the wrongdoers controlled the corporation . . ., there would consequently be no one to sue them" (internal quotation marks and brackets omitted) *with **Magnolia N. Prop. Owners' Ass'n v. Heritage Cmties., Inc.***, 725 S.E.2d 112, 125 (S.C. Ct. App. 2012) ("We find unpersuasive Appellants' claim that an organization they controlled would have

---

[19] Nelson claims that ORL relied upon "the Oklahoma doctrine of adverse domination." (Def.'s Br. 54.) This is incorrect: ORL's papers below cite no Oklahoma authorities. ORL merely attached a common label that it believed the District Court would find helpful to a widely recognized doctrine. The District Court apparently preferred a different label.

initiated an action against itself."). (*See also* JA350.) ORL clearly argued, and the District Court clearly accepted, that the limitations period did not run between November 1, 1995, and June 11, 2011, as a consequence of GP's ownership of the confession. The idea that the District Court invented this argument is purely fictitious.[20]

Thus, the District Court's opinion analogizes poorly to the authorities relief upon by Nelson. *Cf. **United States v. Burke***, 504 U.S. 229, 246 (1992) (Scalia, J., concurring) (actually advocating reversal on unbriefed grounds[21]); ***Fils***

---

[20] Furthermore, there is an excellent, independent reason for the District Judge to have cited to South Carolina authorities, even when reiterating a generally accepted legal proposition. Namely, it clarified for this Court that he relied upon the appropriate governing law. ORL discussed tolling below as a general proposition of American equity jurisprudence. (*See* JA215.) The District Court found that South Carolina agreed with the general proposition and rooted its decision in South Carolina law. (*Id.* at 435–36.) The District Court was correct to do so. State law provides the rule of decision in cases for which the participation of a banking regulator is the jurisdictional hook, so long as the state law is not inconsistent with a standard imposed by federal law. *See **Atherton v. F.D.I.C.***, 519 U.S. 213, 226 (1997); ***O'Melveny & Myers v. F.D.I.C.***, 512 U.S. 79, 83, 89 (1994). *See also* Part III(A), *supra*. To the extent that the District Court's basis for jurisdiction shifted to diversity, and to the extent that this could work an accompanying shift in the governing law, South Carolina law of course would still apply. *See **Erie R.R. Co. v. Tompkins***, 304 U.S. 64, 78 (1938).

[21] The recitation of the fragment from Justice Scalia's ***Burke*** concurrence is mindless quote-grabbing of the worst kind. Justice Scalia wrote, "The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one. Even so, there must be enough play in the joints that the Supreme Court need not render judgment on the basis of a rule of law whose nonexistence is apparent on the face of things, simply because the parties agree upon it—particularly when the judgment will reinforce

-44-

*v. City of Aventura*, 647 F.3d 1272, 1285–86 (11th Cir. 2011) (trial court denied defendant summary judgment on basis of events that plaintiff had neither pled nor identified as basis for any claim); *Eriline Co., S.A. v. Johnson*, 440 F.3d 648, 653–57 (4th Cir. 2006) (trial court raised limitations defense where defendants neither answered nor appeared); *Acosta v. Artuz*, 221 F.3d 117, 122–23 (2d Cir. 2000) (courts *may* assert limitations defense *sua sponte*, if petitioner given opportunity to respond, where case implicates concerns beyond those of parties); *Hardiman v. Reynolds*, 971 F.2d 500, 501 (10th Cir. 1992) (same). Thus, of the five authorities relied upon by Nelson, three embrace exceptions to the proscription of *sua-sponte* affirmative defenses, one involved a party who made no appearance whatsoever, and one involved a district court effectively pleading a claim for relief on a plaintiff's behalf. None of these situations remotely resembles the situation below.

Nelson was expressly provided notice that ORL sought to defeat his limitations defense on the basis of GP's ownership of the confession. The District Court's action, then, was not *sua sponte*. *See Ionnides v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 418 F. App'x 269, 271 (5th Cir. 2011) (summary judgment

---

error already prevalent in the system. I think that is the case here." *Burke*, 504 U.S. at 246 (Scalia, J., concurring) (citations omitted). The irony of omitting the sentence in which Justice Scalia justifies departing from the general rule is particularly rich in light of the fact that the concurrence addresses not waiver of arguments, but statutory interpretation in light the "maxim *noscitur a sociis,* that a word is known by the company it keeps." *Id.* at 244.

not *sua sponte* despite movant's failure properly to identify type of due process at issue); ***Ferencich v. Meritt***, 79 F. App'x 408, 412 (10th Cir. 2003) (summary judgment not *sua sponte* where movant discussed substance of claim attacked but did not identify it by name). If further demonstration of this point's impotency be needed, analogizing to the Courts of Appeals' waiver rules will provide it. There it is well established that a party need not formulate an argument with clarity or articulate it in the most appropriate terms (or the terms subsequently used) in order to preserve it. *See, e.g.*, ***Plasterers' Local Union No. 96 Pension Plan v. Pepper***, 663 F.3d 210, 216 n.7 (4th Cir. 2011) (party preserved argument related to prudent-investor immunity by citing case for proposition that plaintiff's claim required damages); ***Eberhardt v. Integrated Design & Constr., Inc.***, 167 F.3d 861, 866 n.1 (4th Cir. 1999) (single sentence in motion, which did not use term "causation," nevertheless preserved issue by referring concept in other terms). Likewise, ORL's advocacy of "adverse domination" adequately advanced equitable tolling. For all these reasons, Nelson's argument that the District Court improperly raised a defense on its own motion must be rejected.

B.    The District Court Did Not Abuse Its Discretion in Holding the Statute of Limitations to Have Been Equitably Tolled.

The trial court correctly and reasonably concluded that any relevant statute of limitations was tolled between November 1, 1995, and June 11, 2011, the

time during which GP held the confession. (JA434–36.) As the District Court noted, equitable tolling may "toll[], or temporarily suspend[]," a limitations period "'in order to serve the ends of justice.'" (JA434 (brackets omitted), *quoting* ***Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.*** (***Hooper II***), 687 S.E.2d 29, 32 (S.C. 2009).) The doctrine "typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control . . . and serves to ameliorate the harsh results that sometimes flow from a strict, literalistic application of administrative time limits." ***Hooper II***, 687 S.E.2d at 33 (internal quotation marks omitted). Like other equitable tools, it "is not bound by cast-iron rules but exists to do fairness and is flexible and adaptable to particular exigencies . . . when the interests of justice compel its use." ***Id.*** The District Court found that GP's possession of the confession qualified under South Carolina law for the use of equitable tolling: its use of the mechanism was not predicated on a legal or factual error, *cf.* ***Am. Bankers Ins. Group, Inc. v. Long***, 453 F.3d 623, 629 (4th Cir. 2006), or otherwise arbitrary. It is thus not subject to reversal under the abuse-of-discretion standard. *See* Part I, *supra*.

The South Carolina Court of Appeals applied equitable tolling to a set of facts analogous, but by no means as egregious, as those at bar in the ***Magnolia North Property*** case relied upon by the District Judge. There, a condominium owners' association had claims against the condominium's developer, which had

seemingly accrued outside the limitations period. ***Magnolia N. Prop.***, 725 S.E.2d at 117. But the developer had operated the owners' association up until eight months before the case was filed. ***Id.*** at 125. Since the developer was never going to sue itself, justice required that the limitations period be tolled until the developer relinquished control over the association and with it the claims in question. ***Id.***

Here, GP held Nelson's confession of judgment for sixteen years, beginning less than a year after the settlement agreement was executed and ending just over three months before the confession was filed in the District Court. (*See* JA11, 434–36.) GP is Nelson's alter ego and is under his control. *See **Orlando Residence Ltd. v. GP Credit Co.**,* 553 F.3d 550, 557–58 (7th Cir. 2009); ***Orlando Residence Ltd. v. GP Credit Co.**,* 609 F. Supp. 2d 813, 815 (E.D. Wis. 2009). Indeed, for much of that period, Nelson held out the $4 million confession as an outstanding liability with which to avoid ORL's collection efforts. (*E.g.*, JA146, 203.) Manifestly, Nelson was no more going to enter and collect the confessed judgment against himself than the developer in ***Magnolia North Property*** was going to sue itself. Because the rights associated with the confession lay unassertable in Nelson's hands, despite ORL's diligent efforts to marshal Nelson's assets, *cf.* ***Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.*** (***Hooper I***), 659 S.E.2d 213, 220 (S.C. Ct. App. 2008), *rev'd* ***Hooper II***, 687 S.E.2d at 34 ("a

diligent plaintiff"), the District Court was correct to toll the limitations period for that period.

The theory is not unique to South Carolina nor strange to this Court. *See, e.g.*, ***Cocke***, 7 F.3d at 402 (applying a rule almost identical to that in ***Magnolia North Property***).   Indeed, it is a "salutary and salubrious" mechanism, *see* ***Hooper I***, 659 S.E.2d at 224, performing an essential role in the proper functioning of an equitable system of justice. "It would be absurd for the Court to allow the viability of a plaintiff's claim to hinge on the action or inaction of the very individual[] who [is the defendant]." ***Hecht***, 818 F. Supp. at 898.

C.   Nelson's Miscellaneous Bases for Attacking the District Court's Ruling Are Universally Unavailing.

Nelson presents a small menagerie of reasons why, in his contention, equitable tolling cannot be applied in this case. None of these warrants protracted treatment.

1.   ORL Cannot Be Precluded from Asserting Its Rights Simply because It Is Another Party's Successor in Interest.

Nelson insists that ORL, as a successor to the original creditor,[22] cannot suffer a sufficiently great injury to warrant interposition of an equitable remedy. (Def.'s Br. 59–60.) Nelson props this argument with somewhat fanciful assertions

---

[22] That is, to borrow Nelson's hyperbolic but comic pejorative, a "speculator in old claims." (Def.'s Br. 59.)

regarding ORL's motivations,[23] but does not provide any legal authority to buttress it. This line of reasoning should be rejected first, because Nelson did not present it to the trial court. (*Cf.* JA231–247.) *See Holland*, 181 F.3d at 605. It should be rejected second because it is gratuitously asserted without supporting legal authority. *See, e.g.*, *Simpson v. T.D. Williamson Inc.*, 414 F.3d 1203, 1206 n.4 (10th Cir. 2005). It should be rejected third, other objections failing, because assignees and successors may, in fact, benefit from equitable tolling. *See R.T.C. v. Acton*, 49 F.3d 1086, 1087 (5th Cir. 1995). An assignee acquires all of the assignor's rights, even those peculiar to a particular assignor such as the RTC. *Twelfth RMA Partners, L.P. v. Nat'l Safe Corp.*, 518 S.E.2d 44, 46 (S.C. Ct. App. 1999). Indeed, the RTC assigned choses in action as a matter of course, *see* FDIC, *Managing the Crisis: The FDIC and the RTC Experience 1980–1994* 443–45 (1998), *available via* www.fdic.gov/databank (*see also* JA105), a practice that would have had little point if it deprived assignees of meaningful access to the courts.

Indeed, precluding ORL from enforcing the judgment against Nelson merely because of the manner in which it became the confession's owner would

---

[23] Nelson claims that ORL sought the confession of judgment solely "to improperly interfere with Nelson's" interests in Alliance. (Def.'s Br. 61.) In reality, however, ORL merely sought the confession in an effort to collect its judgment. Nelson cost himself substantial distributions from Alliance by questioning the finality of ORL's Tennessee judgment through the filing of a late appeal in Wisconsin. *See supra* at 9; Part V(D)(3).

frustrate the very purpose of both the Wisconsin turnover order and the alter-ego ruling on which it was predicated. This would impermissibly permit Nelson to profit from his own wrongdoing.[24] *See, e.g.*, **Bigelow v. RKO Radio Pictures**, 327 U.S. 251, 264–65 (1946); **Grooms v. Kennerly**, 401 S.E.2d 190, 193 (S.C. Ct. App. 1991); 1 Henry R. Gibson, **Gibson's Suits in Chancery** § 60 (Arthur Crownover ed. 5th ed. 1955) (1891). Nelson's attempt to relegate assignees and judgment creditors to the steerage level of the judicial world, in favor of fraudulent conveyors, should be rejected.

> 2. Equitable Tolling Is Not Confined to the Limited Circumstances Claimed by Nelson.

Nelson also suggests that equitable tolling should not be available in a situation of this sort at all, but is rather somehow limited to claims involving disloyalty or additional wrongdoing that "outweighs" the interests reflected in statutes of limitations. (*See* Def.'s Br. 58–63.) Nelson's characterization of the law is simply false. First, courts do apply applicable equitable-tolling mechanisms in

---

[24] Nelson also insists that the confessed judgment should not be enforced because ORL gave Nelson a disproportionately small credit for receiving it. (Def.'s Br. 61.) But the Wisconsin Circuit Court confirmed the amount of the credit several times over (s*ee* JA100–01, 360) in final orders from which Nelson did not appeal. *See Orlando*, 2013 WL 2232290, ¶¶ 19–20. The propriety of the credit is thus res judicata. Besides, Nelson's $4 million liability did not arise because ORL gave a $20,000 credit on a prior judgment in 2011. It arose pursuant to Nelson's own conduct vis-à-vis RTC.

contract cases. *See Magnolia N. Prop.*, 725 S.E.2d at 124–25. *Accord, e.g.*, *Holy Loch Distribs., Inc. v. Hitchcock*, 503 S.E.2d 787, 791, 793–94 (S.C. 1998).

Second, the South Carolina Court of Appeals in *Magnolia North Property* did not predicate its ruling on the developer's disloyalty, but merely on the developer's control. *See Magnolia N. Prop.*, 725 S.E.2d at 125. The fact that the developer's failure to cause the association to assert a claim against itself may have involved, in a technical sense, disloyalty was merely the incidental consequence of the circumstance of its control. There is no need to hunt for an esoteric common thread among equitable tolling cases: the courts have repeatedly and explicitly specified that the doctrine operates where a defendant interferes with the assertion of a claim. *See id.*; *see also Hooper II*, 687 S.E.2d at 34 . Here, GP's possession of the confession of judgment held it in amber for sixteen years without hope of being asserted. That period of dormancy should not have been counted against any limitations period applicable against ORL after the confession finally passed out of GP's hands. The Court should reject Nelson's attempt to encase a flexible remedy in a tiny, ossified box of his own invention.

      3.   Nelson's Arguments Regarding Merger and the Alleged Impossibility of Disloyalty Are Inconsistent with a System of Ordered Justice.

Nelson's assertions regarding merger and his inability to act with the supposedly necessary disloyalty towards GP cannot be accepted. Nelson simply

cannot use an equitable ruling rooted in his own misconduct as the predicate for a defense. Such double dealing is wholly foreign to American jurisprudence. *See, e.g.*, 18 Am. Jur. 2d *Corporations* § 46; 18 C.J.S. *Corporations* § 20; *In re Lane*, 215 B.R. 810, 812 (Bankr. E.D. Va. 1997) ("the Debtor should not be permitted to utilize the corporate form on the one hand to protect herself from . . . the Corporation's debts, then on the other hand nullify the existence of that Corporation to avoid reckoning with the obligations incurred"); *All Star, Inc. v. Fellows*, 676 S.E.2d 808, 813 (Ga. Ct. App. 2009) ("a party cannot invoke the aid of equitable principles when he does not come into court with clean hands"); *Pantusco v. Wiley*, 616 S.E.2d 901, 903 (Ga. Ct. App. 2005) ("Pantusco seeks to assert his counter-claim based upon his alleged abuse of the corporate form, a proposition we reject."); *Semande v. Estes*, 871 N.E.2d 268, 271 (Ill. Ct. App. 2007) ("Piercing of the corporate veil is limited to protecting those [other than the corporation or its stockholders].)."

A full century ago, the Supreme Court noted, "The nature and extent of [an equitable] decree is . . . to be determined . . . upon an examination of the issues made and intended to be submitted, and what the decree was really designed to accomplish." *City of Vicksburg v. Henson*, 231 U.S. 259, 273 (1913). An alter-ego finding is indisputably equitable. *See Alkire v. N.L.R.B.*, 716 F.2d 1014, 1021 n.5 (4th Cir. 1983). By asking the Court to find merger based on a prior ruling that GP

is Nelson's alter ego, Nelson seeks to invert the decree's purpose and cause it to achieve an end diametrically opposed to that appearing on its face. *Cf. Orlando*, 553 F.3d at 555. No court should indulge such a request.

Moreover, even if Nelson's argument on this point were not facially implausible, he could not benefit from it. Mergers occur only where the parties intend them to occur. *See, e.g.*, *Gainey v. Anderson*, 68 S.E. 888, 889–90 (S.C. 1910). But as the District Court noted (JA436–37), Nelson has repeatedly described the confession of judgment as valid and outstanding (indeed, he repeatedly described it as an entered judgment). *See* Part VII(D), *infra*. That testimony should be taken as conclusive evidence under the circumstances of the absence of an intent to merge the judgment, or judicially estop Nelson from invoking merger.

4. Nelson's Argument Regarding the Absence of Harm to ORL Would Eviscerate Equitable Tolling and Continues His Flawed Presentation of the Doctrine's Basis.

Nelson's argument regarding the absence of harm and the prior expiration of the limitations period fare little better. It cannot be the case that equitable tolling becomes inapplicable if, but for the conduct that tolled the limitations period, the plaintiff would not have suffered an injury. (*Cf.* Def.'s Br. 61–62.) This would preclude every instance of the doctrine's application, since it rests precisely on a defendant preventing the assertion of a plaintiff's rights: any

-54-

defendant, including the ***Magnolia North Property*** developer, against whom equitable tolling is deployed could make precisely the same argument. Nelson presents no authority for the proposition that equitable tolling should be eviscerated in this fashion, nor should this Court provide any.

Moreover, the argument that the confession lapsed in 1999 (Def.'s Br. 63) fails for additional reasons: first, as a result of Nelson's testimony as to the debt's validity, *see* Part VII(D), *infra*. Second, GP was always under the control of Nelson and his wife. Nelson confuses the alter-ego ruling (which made GP's assets available to ORL) and the fact of his dominion of ORL (a distinct circumstance that tolls the limitations period). Third, this reasoning ignores ORL's entitlement to a six-year limitations period as an RTC successor, *see **Twelfth RMA***, 518 S.E.2d at 46–47.

D.    Nelson Is Estopped to Invoke the Statute of Limitations.

Even if the Court were to conclude that the statute of limitations were not tolled for the sixteen years that Nelson held the confession of judgment through GP, he should be estopped to assert that defense. This Court, of course, may confirm on any basis supported by the record and need not confine itself to that articulated by the District Judge. *E.g.*, ***Mann v. Haigh***, 120 F.3d 34, 36 (4th Cir. 1997).

The record amply supports judicially estopping Nelson as to the statute of limitations on the basis of his repeated sworn statements as to the validity of the the debt shown on the confession of judgment. This Court explicitly recognizes judicial estoppel.[25] *See **King v. Herbert J. Thomas Mem'l Hosp.**,* 159 F.3d 192, 196 (4th Cir. 1998); ***Lowery v. Stovall***, 92 F.3d 219, 223 (4th Cir. 1996). Although the doctrine's contours "are probably not reducible to any general formulation," ***Allen***, 667 F.2d at 1166, it generally prohibits a litigant from making assertions that contradict a position he purposefully took as to the same facts in a prior proceeding, ***King***, 159 F.3d at 196, and that the earlier court accepted, ***Lowery***, 92 F.3d at 24. It becomes particularly appropriate where the party presented his former position in the form of a statement made under oath. *See **Hayne Fed. Credit Union v. Bailey**,* 489 S.E.2d 472, 477 (S.C. 1997). This makes perfect sense, as judicial estoppel aims primarily to "protect the essential integrity of the judicial process" from the effects of untruthfulness. ***Allen***, 667 F.2d at 1166. Accordingly, an opposing party need not have detrimentally relied on the prior statement. ***Lowery***, 92 F.3d at 224.

Nelson has repeatedly testified under oath that the $4 million liability memorialized by the confession of judgment in this case is a valid, enforceable,

---

[25] This Court regards the application of judicial estoppel a matter of federal law even where state law otherwise provides the rule of decision. ***Allen v. Zurich Ins. Co.**,* 667 F.2d 1162, 1167 n.4 (4th Cir. 1982).

and outstanding debt. (*See, e.g.*, JA159, 203.) Obviously, if a creditor may collect a debt, that collection is not barred by the statute of limitations.[26] Nelson appears to believe that the status of his liability and the applicability of the statute of limitations are legal matters in regards to which he cannot be estopped. (*See* Resp. Supp. Mot. to Strike, Dkt. 142 at 7, 11.) But the existence and amount of a debt are quintessential fact questions. *See, e.g.*, **Black v. Haile**, 240 S.E.2d 646, 646 (S.C. 1978); **Neville v. Kelley**, 77 S.E. 743, 743 (S.C. 1913). This has been the case since time immemorial. *See* 3 William Blackstone, **Commentaries** *305 ("The general issue . . . in debt upon contract, [is] *nihil debet*, he owes nothing."). Limitations issues in general are likewise for the jury (unless, of course, a rule reserved to the court, such as equitable tolling, determines the question). *See* **Dunbar v. Carlson**, 533 S.E.2d 913, 917 (S.C. Ct. App. 2000).

Moreover, prior courts have relied upon Mr. Nelson's testimony. The Wisconsin Circuit Court for Ozaukee County, for instance, relied upon it when it

---

[26] This disposes once again of Nelson's argument that the limitations period lapsed in 1999 on the supposed basis that GP did not become his alter ego until 2001. (*See* Def.'s Br. at 63.) Nelson makes several additional errors in advancing this argument. First, in the 2011 proceedings in the Eastern District of Wisconsin, ORL made neither concession identified on page sixty-three of Nelson's brief. That proceeding, and ORL's only concession, related to the interpretation of Oklahoma's judgment-dormancy statute. **Orlando Residence, Ltd. v. Nelson**, No. 11-MC-55, 2011 WL 4983170, at *1 n.1 (E.D. Wis. Oct. 19, 2011). That statute, not at issue here, is not one of limitations, but instead irretrievably extinguishes a judgment five years from the last renewing act. **U.S. Mortgage v. Laubach**, 73 P.3d 887, 897 (Okla. 2003). The issue thus has no relevancy here.

ordered the confession turned over to ORL and gave Nelson a credit against ORL's judgment. (*See* JA100–01.) Accordingly, the criteria for the imposition of judicial estoppel are present, and, should be deployed to forestall Nelson's attempt to impair the integrity of the judicial process, in the event that the Court finds equitable tolling inapplicable.

## VIII.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING NELSON RELIEF UNDER RULE 60.

Nelson asks under a separate heading that the Court find an abuse of discretion in the District Court's refusal to grant his Rule 60 motion. (Def.'s Br. 70.) But this argument falls along with the ones that preceded it. Since the District Court did not make a prejudicial error, there could be no basis for relief under Rule 60. ***Nat'l Credit Union Admin. Bd. v. Gray***, 1 F.3d 262, 264 (4th Cir. 1993). Accordingly, there was no "reason that justifie[d] relief" from the judgment.

## IX.  NELSON IS NOT ENTITLED TO AN ORDER REQUIRING ORL TO DISGORGE AMOUNTS COLLECTED.

ORL has obtained charging orders from state courts pursuant to the judgment below; it has not sought executory process from a federal court. Nelson has made no showing that the order he seeks falls within an exception to 28 U.S.C. § 2283. His request should therefore be denied, regardless of the outcome on other

issues. This is particularly the case if the Court remands this matter for further proceedings. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148 (1988).

## CONCLUSION

ORL obtained Nelson's confession via court order in Wisconsin. It filed it here, in an action that had never been terminated by a final judgment. The District Court entered judgment on the confession, properly finding it, based in part on Nelson's own testimony, to be valid, enforceable, and not barred by the statute of limitations. It did not err in doing so. The District Court's decision should be affirmed in all respects.

Respectfully submitted,

s/Eugene N. Bulso, Jr.
Eugene N. Bulso, Jr. (Tenn. BPR No. 12005)
Paul J. Krog (Tenn. BPR No. 29263)
LEADER, BULSO & NOLAN, PLC
414 Union Street, Suite 1740
Nashville, Tennessee 37219
(615) 780-4110

*Attorneys for Plaintiff/Appellee,*
*Orlando Residence, Ltd.*

-59-

## STATEMENT WITH REGARD TO ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and Local Rule 34(a), ORL requests that the Court grant oral argument in this case. Nelson's requests for relief, while not meritorious, are not frivolous within the meaning of Rule 34(a)(2). Moreover, ORL believes that the decisional process would be aided by oral argument, especially by allowing the Appellee to address directly any questions that the Court might have after review of the parties' briefs.

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)</u>

1.   This brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B) by virtue of the fact that the content subject to the limitations of that provision consists, according to the word-counting mechanism of Microsoft Office Word 2010, of 13,894 words typed in a proportionally spaced font.

2.   This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) by virtue of the fact that it was prepared using Microsoft Office Word 2010 and typed in fourteen-point Times New Roman font.


 s/ Eugene N. Bulso, Jr. 

Counsel for Appellees
June 10, 2013

# RULE 32(f) ADDENDUM OF STATUTES, RULES, AND REGULATIONS

**12 U.S.C. § 1441a (1994).    Thrift Depositor Protection Oversight Board and Resolution Trust Corporation**

\* \* \* \*

**(b) Resolution Trust Corporation established**
  **(1) Establishment**
    **(A) In general**
      There is hereby established a Corporation to be known as the Resolution Trust Corporation which shall be an instrumentality of the United States.

\* \* \* \*

**(*l*) Power to remove; jurisdiction**
  **(1) In general**
      Notwithstanding any other provision of law, any civil action, suit, or proceeding to which the Corporation is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction over such action, suit, or proceeding.
  **(2) Corporation as party**
      The Corporation shall be substituted as a party in any civil action, suit, or proceeding to which its predecessor in interest was a party with respect to institutions which are subject to the management agreement dated February 7, 1989, among the Federal Savings and Loan Insurance Corporation, the Federal Home Loan Bank Board and the Federal Deposit Insurance Corporation.
  **(3) Removal and remand**

\* \* \* \*

  **(B) Substitution**
      The Corporation shall be deemed substituted in any action, suit, or proceeding for a party upon the filing of a copy of the order appointing the Corporation as conservator or receiver for that party or the filing of such other pleading informing the court that the Corporation has been appointed conservator or receiver for such party.

* * * *

**(m) Termination**
    **(1) In general**
       The Corporation shall terminate not later than December 31, 1995. If at the time of its termination, the Corporation is acting as a conservator or receiver, the Federal Deposit Insurance Corporation shall succeed the Corporation as conservator or receiver.

## 12 U.S.C. § 1730(k)(1) (1988).  Termination of insurance and enforcement provisions

* * * *

**(k) Jurisdiction and enforcement**
**(1)** Notwithstanding any other provision of law, (A) the Corporation shall be deemed to be an agency of the United States within the meaning of section 451 of title 28; (B) any civil action, suit, or proceeding to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and (C) the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district and division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect: *Provided*, That any action, suit, or proceeding to which the Corporation is a party in its capacity as conservator, receiver, or other legal custodian of an insured State-chartered institution and which involves only the rights or obligations of investors, creditors, stockholders, and such institution under State law shall not be deemed to arise under the laws of the United States. No attachment or execution shall be issued against the Corporation or its property before final judgment in any action, suit, or proceeding in any court of any State or of the United States or any territory, or any other court.

-63-

**12 U.S.C. § 1819. Corporate powers**

\* \* \* \*

**(b) Agency authority**

\* \* \* \*

**(2) Federal court jurisdiction**
**(A) In general**
Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States.

**12 U.S.C. § 1823. Corporation monies**

\* \* \* \*

**(e) Agreements against interests of Corporation**
**(1) In general**
No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
**(A)** is in writing,
**(B)** was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
**(C)** was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
**(D)** has been, continuously, from the time of its execution, an official record of the depository institution.
**(2) Exemptions from contemporaneous execution requirement**
An agreement to provide for the lawful collateralization of—
**(A)** deposits of, or other credit extension by, a Federal, State, or local governmental entity, or of any depositor referred to in section

-64-

       1821(a)(2) of this title, including an agreement to provide collateral in lieu of a surety bond;

**(B)** bankruptcy estate funds pursuant to section 345(b)(2) of Title 11;

**(C)** extensions of credit, including any overdraft, from a Federal reserve bank or Federal home loan bank; or

**(D)** one or more qualified financial contracts, as defined in section 1821(e)(8)(D) of this title,

shall not be deemed invalid pursuant to paragraph (1)(B) solely because such agreement was not executed contemporaneously with the acquisition of the collateral or because of pledges, delivery, or substitution of the collateral made in accordance with such agreement.

## 28 U.S.C. § 1874. Actions on bonds and specialties

In all actions to recover the forfeiture annexed to any articles of agreement, covenant, bond, or other specialty, wherein the forfeiture, breach, or nonperformance appears by default or confession of the defendant, the court shall render judgment for the plaintiff for such amount as is due. If the sum is uncertain, it shall, upon request of either party, be assessed by a jury.

## 28 U.S.C. § 2283. Stay of State court proceedings

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

## U.S. Constitution, Amendment XIV, § 1

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

## South Carolina Code § 15-35-350. Judgment by confession; generally.

A judgment by confession may be entered without action either for money due or to become due or to secure any person against contingent liability on behalf of the defendant, or both, in the manner prescribed in this article.

**South Carolina Code § 15-35-350.  Judgment by confession; statement in writing and contents thereof**

Before a judgment by confession shall be entered a statement in writing must be made and signed by the defendant and verified by his oath to the following effect:

**(1)** It must state the amount for which judgment may be entered and authorize the entry of judgment therefor;

**(2)** If it be for the money due or to become due, it must state concisely the facts out of which it arose and must show that the sum confessed therefor is justly due or to become due; and

**(3)** If it be for the purpose of securing the plaintiff against a contingent liability, it must state concisely the facts constituting the liability and must show that the sum confessed therefor does not exceed the liability.

**Federal Rule of Evidence 803(15).  Exceptions to the Rule Against Hearsay— Regardless of Whether the Declarant Is Available as a Witness**

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

\* \* \* \*

**(15) Statements in Documents That Affect an Interest in Property.** A statement contained in a document that purports to establish or affect an interest in property if the matter stated was relevant to the document's purpose--unless later dealings with the property are inconsistent with the truth of the statement or the purport of the document.

**Federal Rule of Civil Procedure 60. Relief from a Judgment or Order**

\* \* \* \*

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

  **(1)** mistake, inadvertence, surprise, or excusable neglect;

  **(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

**(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

**(4)** the judgment is void;

**(5)** the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

**(6)** any other reason that justifies relief.

## __RULE 32.1 ADDENDUM OF UNAVAILABLE DISPOSITIONS__

- *Orlando Residence, Ltd. v. Kenneth E. Nelson*, No. 2012AP1528, slip op. (Wis. Ct. App. Aug. 21, 2012).

- *In re: Elec. Case Filing Policies and Procedures*, No. 3:05-MC-5003-17 (D.S.C. Feb. 18, 2005).



OFFICE OF THE CLERK
# WISCONSIN COURT OF APPEALS
110 EAST MAIN STREET, SUITE 215
P.O. BOX 1688
MADISON, WISCONSIN 53701-1688
Telephone (608) 266-1880
Facsimile (608) 267-0640
Web Site: www.wicourts.gov

## DISTRICT II

August 21, 2012

*To:*

Hon. James K. Muehlbauer
Circuit Court Judge
PO Box 1986
West Bend, WI 53095

Gary A. Ahrens
Michael Best & Friedrich LLP
100 E. Wisconsin Ave. #3300
Milwaukee, WI 53202-4108

Marylou Mueller
Clerk of Circuit Court
Ozaukee County Circuit Court
1201 South Spring Street
Port Washington, WI 53074-0994

Jacques C. Condon
K. Scott Wagner
Hale & Wagner, S.C.
839 N. Jefferson St., Ste. 400
Milwaukee, WI 53202

You are hereby notified that the Court has entered the following order:

2012AP1528          Orlando Residence, Ltd. v. Kenneth E. Nelson (L.C. # 2007FJ1)

Before Neubauer, P.J.

On July 2, 2012, Kenneth Nelson, Susan Nelson, and Nashville Lodging Co. (hereafter the Nelsons) filed a notice of appeal which states that they appeal from the June 22, 2012 order which "ended the foreign judgment collection proceeding" against them and "previous orders entered since remand of this case including without limitation Order entered 4/16/12."[1] Respondent Orlando Residence, LTD., moves to dismiss the appeal on the ground that the June 22, 2012 order did not dispose of any matter in litigation between the parties and that the orders entered since appellate remittitur were either final when entered and not timely appealed

---

[1] The Nelsons attach to their docketing statement copies of the June 22, 2012, April 16, 2012, December 5, 2011, June 7, 2011, and June 6, 2011 circuit court orders.

-69-

or entered by consent or in favor of the appellants and not appealable. The Nelsons oppose the motion to dismiss. We conclude that appellate jurisdiction exists because the notice of appeal was timely filed to appeal the June 22, 2012 order. The determination of whether all orders since remand are before this court in this appeal is dependent on whether circuit court's June 22, 2012 order is affirmed or reversed on appeal. The motion to dismiss is denied.

This appeal arises from Orlando's efforts to collect on a Tennessee judgment against Kenneth Nelson. *Orlando Residence LTD v. Nelson*, Nos. 2008AP2989, 2009AP856, unpublished slip op at ¶1 (WI App Dec. 30, 2009). As explained by the Nelsons, a November 18, 2008 order captured many of the Nelsons' assets, imposed a trust upon certain assets, and restricted the Nelsons' use of assets. That order was affirmed on appeal and remittitur occurred on April 20, 2010. *See id.* A sheriff's sale of certain real estate was conducted in September 2010 and the Nelsons filed multiple motions thereafter. Orders of June 6 and 7, 2011 denied the Nelsons' motions to dismiss and set aside the sheriff's sale, granted Orlando's motion to turnover other property, granted a credit against the judgment, and set for evidentiary hearing the Nelsons' request for recognition of homestead rights. A December 5, 2011 order resolved all pending motions filed by the Nelsons after the June 6, 2011 order, including a motion to extend the time to redeem the property and motions for reconsideration. The December 5, 2011 order also granted the Nelsons' claim of homestead rights. A March 23, 2012 order denied Orlando's second motion to apply property which had been filed in September 2011. On the parties' joint petition, the circuit court's April 16, 2012 order released funds to Orlando and directed the clerk of the circuit court to reflect the original 2007 judgment as satisfied in full.

On May 7, 2012, the Nelsons filed a "MOTION FOR FINAL ORDER," and brief in support.[2]  The Nelsons sought entry of an order ending the restrictions imposed by the December 18, 2008 order and which would explicitly state that all matters in litigation were adjudicated.  The proposed final order included with the Nelsons' motion provided:  "With this order, all matters in this litigation are finally adjudicated and this is a final, appealable order as defined by Wisconsin Stat. Section 808.03(1)."[3]  In response to the motion, Orlando argued that the Nelsons were attempting to belatedly appeal one or more of the circuit court's prior final rulings and that they erroneously asserted that the various orders entered in the execution proceedings were not final.  By its June 22, 2012 order, the circuit court denied the Nelsons' motion and concluded:  "The court is satisfied that this entire matter has already been disposed of without the need for the court to enter a further judgment or order.  A series of 'final orders' are already in place."

We first reject Orlando's contention that no appeal can be taken from the June 22, 2012 order because it did not resolve a dispute between the parties or dispose of any portion of the litigation.  Contrary to Orlando's view, the Nelsons' motion for a final order sought relief from

---

[2]  The Nelsons' motion for final order and brief in support are not in the appellate record.  They are reproduced in Orlando's motion to dismiss and cited to without objection in the Nelsons' response.  Therefore for purpose of addressing the motion to dismiss, we utilize the motion and brief as if part of the record.

[3]  Because the Nelsons' motion is not in the record, the proposed final order is not either.  Orlando's response to the motion for a final order provides the quoted language.

3

the circuit court and the circuit court's ruling on that motion is subject to a timely appeal.[4]  There is no lack of appellate jurisdiction, at least as to the matters determined by the June 22, 2012 order.

Orlando also claims that there is no appellate jurisdiction as to the other prior orders entered prior to the April 16 and June 22, 2012 orders.  Specifically it argues that execution on a judgment may create a sequence of discrete proceedings each of which may result in a final and appealable order and as each motion for application of property or confirmation of sale and motions opposing such relief was decided, a final and appealable order resulted which had to be timely appealed.  *See Sanders v. Estate of Sanders*, 2008 WI 63, ¶¶26, 29, 310 Wis. 2d 175, 750 N.W.2d 806 ("probate of an estate is a series of special proceedings, which are terminated with a series of orders that are final orders for the purposes of appeal" based on the scope of the relevant matter in litigation); *Laube v. City of Owen*, 209 Wis. 2d 12, 15, 561 N.W.2d 785 (Ct. App. 1997) (if the prior judgment or order was final, an appeal which is not timely filed from the judgment or order does not bring it before the court for review because an appeal from a later judgment or order raises only *prior* nonfinal decisions).  In turn the Nelsons argue that none of the prior orders were final and appealable because the orders did not include an explicit

---

[4]  Although the Nelsons timely appeal the April 16, 2012 order for release of funds, they argue that it is not a final order.  As Orlando points out, that order was entered on the parties' joint petition and no appeal can be taken from a judgment entered by stipulation.  *See Lassa v. Rongstad*, 2006 WI 105, ¶¶29, 33, 294 Wis. 2d 187,718 N.W.2d 673.  However, the April 16, 2012 order is appealable to the extent that it is a final order which brings before the court any prior nonfinal rulings adverse to the appellants.  *See Haeuser v. Haeuser*, 200 Wis. 2d 750, 757 n.3, 548 N.W.2d 535 (Ct. App. 1996) (regarding the need for finality on all issues put in issue by post judgment motions); WIS. STAT. RULE 809.10(4).

statement that they were final for purposes of appeal.[5]  *See Wambolt v. West Bend Mutual Ins. Co.*, 2007 WI 35, ¶4, 299 Wis. 2d 723, 728 N.W.2d 670; *Tyler v. The Riverbank*, 2007 WI 33, ¶¶25-26, 299 Wis. 2d 751, 728 N.W.2d 686.  They contend that in the absence of such a statement, each order must be construed liberally in favor of preserving the right to appeal.[6]  *Wambolt*, 299 Wis. 2d 72, ¶46, *Tyler*, 299 Wis. 2d 751, ¶26.  Despite the absence of a finality statement in the June 22, 2012 order, the Nelsons treat it as a final order which brings before the appellate court the prior orders.  *See* WIS. STAT. RULE 809.10(4).

It is premature on the motion to dismiss to determine whether or not the prior orders were final and appealable.  Whether or not the entire matter in litigation was disposed of prior to the June 22, 2012 order was put in litigation by the Nelsons' motion seeking entry of a final order.  The parties presented the circuit court with competing arguments on whether or not the prior orders were final.  The circuit court resolved the issue; it decided that the prior orders were a series of final orders and nothing more needed to be done to terminate the litigation.  That is a

---

5 The Nelsons also make reference to the necessity of a final order to do more than simply decide the substantive issues.  *See Tyler v. The Riverbank*, 2007 WI 33, ¶17, 299 Wis. 2d 751, 728 N.W.2d 686 ("a court merely addressing, or deciding, substantive issues is not enough to qualify as disposing of them").  *See also See Kenosha Prof'l Firefighters v. City of Kenosha*, 2009 WI 52, ¶28, 317 Wis. 2d 628, 766 N.W.2d 577 (an order which merely denied a claim for costs and attorney fees was not final because it did not take the additional step to dispose of the claim by dismissing it); *Wambolt v. West Bend Mutual Ins. Co.*, 2007 WI 35, ¶35 n.14, 299 Wis. 2d 723, 728 N.W.2d 670 ("language that merely grants a motion for summary judgment does not suffice to dispose of an entire matter in litigation").  The argument is not sufficiently developed and even if it is, Orlando, as the movant, does not have the opportunity to respond to it under WIS. STAT. RULE 809.14(1).

6 In *Admiral Insurance Company v. Paper Converting Machine Company*, 2012 WI 30, ¶29, 339 Wis. 2d 291, 811 N.W.2d 351, the supreme court stated, "The absence of a finality statement cannot be used to create ambiguity when it is unambiguous that the order or judgment disposed of the entire matter in litigation as to one or more of the parties."  Neither party discusses *Admiral*.

determination to be reviewed on the merits after briefing.[7] If the Nelsons are successful and obtain reversal of the circuit court's determination that no final order was necessary, the matter will be remanded for entry of necessary final order or orders and the Nelsons can timely appeal. *See Kenosha Prof'l Firefighters v. City of Kenosha*, 2009 WI 52, ¶¶7, 42, 317 Wis. 2d 628, 766 N.W.2d 577. If the circuit court's order is affirmed, there can be no appeal from the prior final orders and briefing issues arising from those orders is unnecessary.[8] Thus, briefing in this appeal is properly limited to the determinations made by the June 22, 2012 order.

Upon the foregoing reasons,

IT IS ORDERED that the motion to dismiss the appeal is denied; the appeal is limited to the issues determined in the June 22, 2012 order.

---

Diane M. Fremgen
*Clerk of Court of Appeals*

---

[7] We acknowledge that in *Laube v. City of Owen*, 209 Wis. 2d 12, 15 n.2, 561 N.W.2d 785 (Ct. App. 1997), we decided on a motion to dismiss whether a prior order was final and appealable so as to foreclose briefing on issues over which the court did not have jurisdiction. In contrast to *Laube*, here the circuit court determined finality of the prior orders and the appeal itself brings the issue for appellate review.

[8] If final orders were entered on the merits, an order denying reconsideration would also be final when entered. Because the July 2, 2012 notice of appeal is not timely filed as to any order denying the Nelsons' motions for reconsideration, it is not necessary then to determine if the orders denying reconsideration are separately appealable. *See Ver Hagen v. Gibbons*, 55 Wis. 2d 21, 197 N.W.2d 752 (1972) (a motion for reconsideration cannot be used to extend the time to appeal from a judgment or order when that time has expired); *Silverton Enterprises v. General Casualty Co.*, 143 Wis. 2d 661, 665, 422 N.W.2d 154 (Ct. App. 1988) (an appeal cannot be taken from an order denying a motion for reconsideration which presents the same issues as those determined in the order sought to be reconsidered).

# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | ) |
| | ) |
| | ) |
| ELECTRONIC CASE FILING | ) |
| POLICIES AND PROCEDURES | ) |
| | ) |
| | ) |

Misc. No. 3:05-MC-*5003*-17

**ORDER**

      Federal Rule of Civil Procedure 5(e) authorizes this Court to establish practices and procedures for the filing, signing, and verification of documents by electronic means. This Order establishes an Electronic Case Filing (hereinafter "ECF") system in the United States District Court for the District of South Carolina. ECF utilizes automation technology in the administration of justice and is intended to promote cost savings, to make maintenance of court records more efficient, and to give the public greater access to case file information.[1] This Order adopts the ECF Policies and Procedures, which provides direction for the filing and maintenance of documents electronically.

      IT IS, THEREFORE, ORDERED THAT:

      1.     The United States District Court for the District of South Carolina establishes an ECF system by adoption of the ECF Policies and Procedures. The court directs the Clerk of Court to establish more detailed procedures to be published in the District of South Carolina's ECF Attorney User Manual. The Clerk of Court may amend the ECF Attorney User Manual

---

[1]ECF will be implemented in accordance with the E-Government Act of 2002, 44 U.S.C. § § 3601-06 (2004).

from time to time as appropriate. In the event of a conflict, the ECF Policies and Procedures control.

      2.      The Clerk of Court shall maintain a copy of this Order, the ECF Policies and Procedures, and a current version of the ECF Attorney User Manual on the court's public website and make these documents available to individuals who may not have web access.

      3.      The ECF system shall be implemented on February 28, 2005.

## IT IS SO ORDERED.

FOR THE COURT:

Joseph F. Anderson, Jr.
Chief Judge

Entered at
Columbia, South Carolina
on February 18, 2005

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 10th day of June, 2013, a copy of the foregoing Brief was filed through the Court's Electronic Case Management system and served thereby on all parties indicated on the electronic-filing receipt.


 s/ Eugene N. Bulso, Jr.
Counsel for Appellee